UNITED STATES of America,
Plaintiff-Appellee,

v.

Gary Oscar BUSBY,
Defendant-Appellant.

No. 84–5351.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 1985.

Decided Jan. 14, 1986.

Jeffrey Modisett, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Allan Ides, Los Angeles, Cal., for defendant-appellant.

Before HUG and HALL, Circuit Judges, and JAMESON *, District Judge.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Defendant Gary Busby appeals from his conviction for possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), and conspiracy to possess cocaine with intent to distribute, 21 U.S.C. § 846. We affirm.

## BACKGROUND

Busby acted as the middleman in a sale of five kilos of cocaine from Richard Mandell, a former employee in Busby's barber shop, to Jerrold Cowen, a salesman who was a frequent customer in Busby's shop. Cowen occasionally had informed on drug dealers in order to gain reward money from police by posing as a go-between for nonexistent drug purchasers. Cowen had acted as a paid informant for federal and state agencies on several occasions between 1968 and 1970. He also had approached Detective Velez of the Ventura Police Department in July 1983, attempting to provide information regarding a narcotics ring in exchange for the fixing of a traffic ticket. The deal fell through, even though Cowen provided good information, because of Cowen's refusal to testify.

* Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

Busby and Cowen each testified that the other initiated the particular cocaine transaction at issue. According to Busby, Cowen told him that he could get back the money which Cowen owed him on a previous loan by introducing Cowen to people who Busby knew wanted to buy cocaine. Cowen explained that he made his money like a real estate agent, introducing people interested in making a deal to each other and earning a commission.

Busby agreed to introduce Cowen to Mandell, his former employee, and a meeting was arranged. Mandell offered to sell Cowen a kilogram of cocaine for $41,500. Cowen closed the meeting by indicating that he would have to get some financial backers. When he had not heard from Cowen within a few days of this initial meeting, Busby called Cowen to ask whether the deal was still going forward. Busby also bought several different samples of cocaine from Mandell in order to give Cowen's supposed buyers an indication of the quality of the cocaine that would be provided.

Once Cowen had seen the cocaine samples, he contacted the FBI and, when the FBI showed a lack of interest, he contacted the Ventura Police Department. Detective Velez of the Ventura Police Department eventually posed as Cowen's buyer. After several meetings and monitored telephone calls, Mandell and Cowen agreed on a deal for five kilograms of cocaine. The sale was set up and the arrest of Busby, Mandell and several other alleged conspirators followed.

### DISCUSSION

█ In order to establish entrapment a defendant must show: (1) that he was induced to commit the crime by a government agent; and (2) that he was not otherwise predisposed to commit the crime. *United States v. Rhodes*, 713 F.2d 463, 467 (9th Cir.), *cert. denied*, 464 U.S. 1012, 104 S.Ct. 535, 78 L.Ed.2d 715 (1983); *United States v. Shapiro*, 669 F.2d 593, 597 (9th Cir.1982). The trial court will instruct on entrapment only if the defendant presents

some evidence of both elements of the entrapment defense. *See United States v. Brandon*, 633 F.2d 773, 778 (9th Cir.1980) ("[t]he court may properly refuse to give an entrapment instruction to the jury when a rational view of the evidence does not support the defense"); *United States v. Glaeser*, 550 F.2d 483, 487 (9th Cir.1977) ("[i]f the evidence presents no genuine dispute as to whether the defendant was entrapped, there is no factual issue for the jury"). We review the district court's determination that the defendant's evidence was insufficient to require an entrapment instruction for an abuse of discretion. *United States v. Fleishman*, 684 F.2d 1329, 1342 (9th Cir.), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982). We conclude that the district court did not abuse its discretion in concluding that Busby's evidence was insufficient to create a jury question on either element of the entrapment defense.

### I. AGENCY

Busby can establish entrapment only if Cowen was a government agent at the time of the alleged inducement. *See Rhodes*, 713 F.2d at 467; *Brandon*, 633 F.2d at 778 n. 5. *See also United States v. Leroux*, 738 F.2d 943, 947–48 (8th Cir.1984) (citing cases). Busby argues that Cowen's record as a paid informant plus the Ventura Police Department's request that Cowen provide them with any information he may find in the future created a jury question as to Cowen's status as a government agent. We disagree.

In *Brandon* we rejected a defendant's claim that the jury should have been instructed on entrapment when the defendant was induced to make cocaine sales by a private citizen who later became a government informant. 633 F.2d 777–78. Bracelin, the private citizen, was persuaded to make cocaine purchases on behalf of Yarbrough, who, unbeknownst to Bracelin, was a Drug Enforcement Agency (DEA) agent. *Id.* at 777. Bracelin became aware that Yarbrough was a DEA agent after he was arrested for making several drug pur-

chases from Brandon, the defendant, on Yarbrough's behalf. *Id.* Bracelin then agreed to cooperate with the DEA in apprehending Brandon. *Id.* We noted that any inducement by Bracelin before Bracelin's arrest was not entrapment because "[a]s a private citizen, not cooperating with the Government, Bracelin's approach to Brandon before [his arrest] was not Government solicitation or inducement." *Id.* at 778 n. 5. *See also Rhodes,* 713 F.2d at 467 (bounty hunter's exchange of information with police did not make him government agent).

■ The district court did not abuse its discretion in concluding that Busby's evidence was insufficient to establish a jury question as to Cowen's status as a government agent at the time he induced Busby to participate in the cocaine sale. Cowen's previous activities as a paid informant with other state and federal agencies and his expectation that he would be compensated for providing the information do not establish an agency relationship. During the initial meetings with Busby, Cowen's actions were not directed or supervised by the government. In fact, the police were wholly unaware of Cowen's activities. Similarly, the request by Ventura Police that Cowen keep them informed of drug information that he obtained in the future did not create an agency relationship. This was an informal request for potential future information, not an agreement that Cowen would work on behalf of the police to obtain information.[1]

## II. PREDISPOSITION

■ In determining whether a criminal defendant is predisposed to commit a particular crime we examine:

the character or reputation of the defendant, including any prior criminal record;

whether the suggestion of the criminal activity was initially made by the Government; whether the defendant was engaged in the criminal activity for profit; whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and the nature of the inducement or persuasion supplied by the Government.

*United States v. Reynoso-Ulloa,* 548 F.2d 1329, 1336 (9th Cir.1977), *cert. denied,* 436 U.S. 926, 98 S.Ct. 2820, 56 L.Ed.2d 769 (1978) (footnotes omitted). Although none of these factors is controlling, the defendant's reluctance to engage in criminal activity is the most important. *Rhodes,* 713 F.2d at 467; *Reynoso-Ulloa,* 548 F.2d at 1336. Government initiation of illegal activity is one factor to be considered, but it is not determinative so long as the government only provides the defendant with an opportunity to commit a crime which he was already predisposed to commit. *United States v. Kidd,* 734 F.2d 409, 413 (9th Cir.1984); *Glaeser,* 550 F.2d at 487.

Some of our decisions applying *Reynoso-Ulloa* have emphasized the defendant's eagerness to complete the illegal activity, *Fleishman,* 684 F.2d at 1343, or the defendant's participation in a variety of acts in furtherance of the illegal activity, *Rhodes,* 713 F.2d at 467. In *Rhodes* the defendant was charged with participation in a scheme to distribute checks stolen from the United States mail. *Id.* at 466. We summarized the evidence regarding predisposition as follows:

The evidence at trial established that apart from the transaction with [the government agent], Dudley engaged in numerous acts intended to further the objects of the conspiracy.... For example, Dudley recruited government wit-

---

1. Busby's reliance on *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), to support his claim that Cowen was a government agent is not persuasive. In *Sherman* the Supreme Court held that the government could not claim that its informant was not a government agent at the time the defendant was induced to see the government informer. *Id.* at 373–74, 78 S.Ct. at 821–22. However, the evidence of agency between the government and the informant was significantly stronger than in the present case. The informant had been convicted of selling drugs but had not yet been sentenced for the offense, had provided information to the government in two other drug cases immediately before his activities in *Sherman,* and eventually had received a suspended sentence for his cooperation with the government. *Id.* at 373–74 & n. 3, 78 S.Ct. at 821–22 n. 3.

ness Lorraine Belloti to distribute stolen checks, he instructed her to open a fictitious bank account in the name Rosie Kendricks, he received stolen checks from government witness Eddie Lewis, he opened mail brought by co-defendant Terry Rhodes and removed checks....

*Id.* at 467. *See also Brandon,* 633 F.2d at 777–78 (noting that defendant traveled to another city under an assumed name and provided drug samples to the buyer).

 In this case Busby was engaged in the illegal activity for profit. Busby's telephone call to Cowen when he had not heard from Cowen within three days of the initial meeting with Mandell and Busby's purchase of the cocaine samples from Mandell to facilitate the sale are strong evidence of Busby's predisposition to commit the crimes in question. Even assuming the truthfulness of Busby's testimony that he had no record of drug violations and that Cowen initiated the cocaine sale in question, the district court did not abuse its discretion in concluding that the evidence did not create a jury question regarding Busby's predisposition to commit the crimes in question.

AFFIRMED.