**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Brad Dong LEE, James Young Lee,
Defendants–Appellants.**

Nos. 87–5115, 87–5119.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 10, 1988.

Decided May 5, 1988.

Mark E. Beck, Anthony A. DeCorso, Beck & DeCorso, Robert Corbin, Sharenow & Corbin, Los Angeles, Cal., for defendants-appellants.

David A. Sklansky, Asst. U.S. Atty., Criminal Div., Los Angeles, Cal., for plaintiff-appellee.

Before SNEED, HUG and ALARCON, Circuit Judges.

SNEED, Circuit Judge:

In this consolidated appeal, James and Brad Lee appeal their convictions on eleven

counts of bribery of public officials and conspiracy to bribe public officials under 18 U.S.C. §§ 201(b) and 371. We affirm.

## I.

### FACTS AND PROCEEDINGS BELOW

Brad Lee was the president and James Lee was the on-site manager of Western Building Cleaning Company ("Western"). Western had a contract with the United States Navy to perform custodial work at the Long Beach Naval Shipyard. The Navy employed civilian inspectors to review whether or not Western had correctly performed the various tasks it had contracted to perform. If an inspector determined that a task had not been performed, he would write up a deduction on a discrepancy report or "chit." At the end of each month the Navy would reduce its payments to Western under the contract by an amount calculated from the chits.

The Lees decided to pay the inspectors to reduce the number of deductions against Western, thus increasing Western's profitability. According to the government, James Lee began to cultivate a relationship with one of the government inspectors, Felix Baluyot, in Feburary 1984, soon after Western began working at the shipyard. James Lee bought meals for Baluyot, entertained him at clubs, and paid for repairs on his car. Brad Lee took Baluyot to Las Vegas and gave him $300 for gambling.

In July 1984, according to the government, Brad Lee and Baluyot had a meeting at which they agreed that Baluyot would keep his monthly deductions below $500 in exchange for payments of $400 a month. Despite observing deficiencies warranting at least $2000 in deductions a month, Baluyot kept his deductions under the $500 level agreed upon.

While this arrangement continued the Lees involved Baluyot in an attempt to make a similar deal with another government inspector, Richard Dutton. Dutton refused an invitation to dinner from Brad Lee, and when asked to meet with the Lees he brought along his supervisor. The Lees at that meeting and at later encounters asked for more "cooperation" from Dutton. After a few of these encounters, Dutton went to subsequent meetings equipped with a body wire provided by the Naval Investigative Service (NIS) and taped the conversations. During at least one of these meetings, Brad Lee threatened to report to Dutton's supervisors that Dutton had taken bribes from the previous contractor if Dutton did not cooperate. Dutton continued to refuse to alter the amount of deductions he wrote. The Lees then convinced Baluyot to approach Dutton more directly about accepting bribes to reduce deductions.

Dutton reported Baluyot's offer on behalf of the Lees to the NIS. The NIS instructed Dutton to play along and accept the bribes and reduce his deductions. From November 1984 through March 1985 James Lee gave Baluyot $500 a month to pay Dutton, of which Baluyot actually paid Dutton $300. In March 1985 Baluyot went to the Philippines for several weeks and Dutton approached James Lee and asked how he would get the April payment. From that time on, James Lee himself paid Dutton $500 a month.

The broad outlines of the events described above are not challenged by the Lees. Rather they seek to appear as victims, not culprits. They say they were coerced by Dutton. They say that Baluyot's testimony about the payments he received is unsubstantiated by any evidence. They say that Baluyot approached Dutton independently of Western, and that this is backed by tape-recorded conversations in which Baluyot told Dutton that not only was it his own idea to approach him about the payments, but that James Lee knew nothing about the bribes. This, the defendants assert, amounted to coercion of James Lee by Dutton, who allegedly stated that without his assistance, the Lees would not have gotten the government contract. Dutton, as the Lees see it, was "engaged in a pattern of coercive conduct toward them." Appellant James Lee's Brief at 8. Dutton's motive, in part, the Lees allege, was to retaliate for their firing of a close personal friend of Dutton's, Karen Watson.

During the trial the judge refused to admit several evidentiary proffers that would have tended to establish a motive for Dutton to harass Western. At the conclusion of the trial the judge read the following instruction to the jury:

In order to prove therefore that a defendant acted willfully as opposed to involuntarily in authorizing a payment the government must prove at least one of the following things beyond a reasonable doubt.

A, that a defendant was not motivated by fear of economic loss in authorizing the particular payment,

Or, B, the thing which the defendant sought to obtain by making the payment was not something he believed Western Building was legally entitled to have without making the payment,

Or, C, the defendant did not perceive the threatened economic loss to be of serious magnitude,

Or, D, that the defendant's fear was not such as to substantially impair his ability to exercise free choice,

Or, E, and finally, the defendant was aware of reasonable alternatives to making the payment and chose to not pursue these alternatives.

Brad Lee's Excerpt of Record (E.R.) at 155.

The jury began deliberating about 1:30 p.m. on March 20, 1987. At around 3:00 p.m. the jury sent a note to the judge asking him to reread the instructions "on the key elements of the law as they apply to conspiracy and bribery." E.R. at 156. The judge apparently read the instructions quoted above with only a few changes and then added:

One of the defenses raised by the defendants ... is that they authorized certain payments to be made only because they were told that unless the payments were made the government inspectors would assess deductions against Western Building in a manner not authorized by the custodial contract.... *However, the fact as to whether or not the matters that were authorized by the custodial contract are [sic] for the defendants to prove in their defense because this is an affirmative defense to this charge.*

E.R. at 157 (emphasis added). The defense objected to this added language, contending that it improperly shifted the burden of proof on the issue of intent to the defendants. The court, on the other hand, appears to have believed that economic coercion was an affirmative defense and not the means by which intent may be disproved. E.R. at 159–60.

A few hours later, the jury again asked for "Instructions on voluntary and involuntary aspects of bribery laws, sections A, B, C, D and E." E.R. at 162. The judge again read the instructions as originally given with minor modifications irrelevant to this appeal. He omitted the comments on affirmative defenses set forth above. At the urging of defense counsel the judge read, for the fourth time, "the portion of the coercion instruction regarding the alternative ways in which the government could satisfy its burden of proof, stressing that if the jury concluded that 'threats of economic loss were made by Richard Dutton to any of the defendants,' then in order to find the defendant guilty the jurors must all agree on one particular showing, from the list of alternatives, that the government had made beyond a reasonable doubt." *Id.*

The Lees were found guilty on each count of the indictment. On appeal the Lees argue that (1) the court erroneously instructed the jury that the defendants had the burden of proof on the issue of coercion; (2) the court abused its discretion in refusing to admit evidence that would have showed a pattern of coercion by Dutton; and (3) the court abused its discretion in refusing to give the jury instructions on entrapment by the government. We address these contentions in turn.

## II.

### JURISDICTION

The district court had jurisdiction under 18 U.S.C. § 3231 (1982). This court's jurisdiction rests on 28 U.S.C. § 1291 (1982).

## III.

### STANDARD OF REVIEW

A district court's formulation of jury instructions is reviewed for abuse of discretion. Decisions regarding the relevancy of evidence are also reviewed for abuse of discretion. *United States v. Burreson,* 643 F.2d 1344, 1349 (9th Cir.), *cert. denied,* 454 U.S. 830, 847, 102 S.Ct. 125, 165, 70 L.Ed.2d 106, 135 (1981). And failure to give instructions on entrapment of defendants by the government is reviewed for abuse of discretion as well. *United States v. Busby,* 780 F.2d 804, 806 (9th Cir.1986).

## IV.

### DISCUSSION

#### A. *Jury Instructions*

The Lees' basic defense theory is that the specific intent necessary to prove the crime of bribery under 18 U.S.C. § 201 was negated by their fears that they would lose their contract with the government if they did not pay off government inspectors. That is, economic coercion by the bribe taker legally excuses the bribe giver.[1] That theory, the Lees contend, was not properly presented to the jury. As already indicated, they argue that the jury instructions given by the judge on his second reading improperly shifted the burden of proof on the question of intent to the defense. The government's response is in three parts. First, it contends that the defendants were not entitled to an instruction on economic coercion in the first place, so whether it was improperly given is irrelevant. It argues that by the clear language of the bribery statute there can be no such defense and that the cases relied upon by the defendants are wrongly decided or easily distinguishable. Second, the government argues that the defendants are not entitled to the instruction because there was no foundation in the evidence for the coercion theory.[2] Third, the government

---

1. The Lees find support for their theory in *United States v. Barash,* 365 F.2d 395 (2d Cir.1966). In that case, the Second Circuit decided that "if a government officer threatens serious economic loss unless paid for giving a citizen his due, the latter is entitled to have the jury consider this, not as a complete defense like duress but as bearing on the specific intent required for the commission of bribery." *Id.* at 401–02. The Lees also rely upon *United States v. Peskin,* 527 F.2d 71 (7th Cir.1975), *cert. denied,* 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976), and *United States v. McPartlin,* 595 F.2d 1321 (7th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979). Both of these cases, however, involved Illinois state bribery statutes and one explicitly assumed only for the purpose of the decision that economic coercion could negate intent. *McPartlin,* 595 F.2d at 1339–40.

   Several circuits have rejected the argument that economic coercion is a defense under § 201 when the briber is merely paying for that to which he is entitled anyway. In an early Ninth Circuit case, *Daniels v. United States,* 17 F.2d 339 (9th Cir.), *cert. denied,* 274 U.S. 744, 47 S.Ct. 591, 71 L.Ed. 1325 (1927), this court said, "It is generally held that to constitute the offense of attempted bribery it is immaterial whether the official action sought to be influenced is right or wrong." *Id.* at 343. Two more recent cases have cited *Daniels* and expressed a similar view. *United States v. Labovitz,* 251 F.2d 393, 394 (3d Cir.1958); *United States v. Miller,* 340 F.2d 421, 424–25 (4th Cir.1965). And *United States v. Colacurcio,* 659 F.2d 684 (5th Cir.1981), *cert. denied,* 455 U.S. 1002, 102 S.Ct.

   1635, 71 L.Ed.2d 869 (1982), noted that there was no duress "if there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm.'" *Id.* at 690 (quoting *United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (quoting W. LaFave & A. Scott, *Handbook on Criminal Law* 379 (1972))). We also note that a plain reading of 18 U.S.C. § 201(b)(1)(A) and surrounding subsections casts doubt on the Lees' economic coercion theory.

2. Defendants are only entitled to instructions on possible defenses if the defense has an evidentiary basis. *United States v. Echeverry,* 759 F.2d 1451, 1455 (9th Cir.1985). An instruction, if legally sound, is required, however, "even if the evidence is weak, insufficient, inconsistent, or of doubtful credibility." *United States v. Washington,* 819 F.2d 221, 225 (9th Cir.1987). In *Barash* and in the other cases the Lees cite, evidence of economic coercion was far more convincing than anything the Lees have demonstrated or proffered in this case. In *Barash* the court ruled that the economic coercion instruction was necessary when "a *government officer threaten[ed]* serious economic loss unless paid for giving [the defendant] his due." 365 F.2d at 401 (emphasis added). And in *Peskin,* the court upheld a jury instruction that stated that economic coercion could only negate criminal intent if "the public officials ... *communicated a threat* to the defendant that unless paid they would take action as public officials against [the defendant]." 527 F.2d at 83 (emphasis added).

argues that the instructions taken as a whole did place the burden on the Government to prove lack of coercion.

While deciding this case based on either the first or second of the government's responses would resolve interesting questions, we shall confine ourselves to the third response. We conclude that any error in the way the instructions were read was harmless.

We start by acknowledging that a defendant is entitled to an instruction concerning his theory of the case if it is supported by law and has some foundation in the evidence. *See United States v. Echeverry,* 759 F.2d 1451, 1455 (9th Cir.1985). Also, we assume, arguendo, that the "economic coercion" instruction is "supported by law" and that it has a foundation in the evidence. Given these assumptions, we must consider whether the instructions given by the judge improperly shifted the burden of proof on economic coercion to the defense.

■ It cannot be denied that the second time the judge read the instructions on economic coercion he shifted the burden of proof to the defendants. *See* Statement of Facts, *supra.* The question is whether reading the instructions four times, twice at the request of the jury, and only once in an improper form, was harmless error.

This court recently stated that "[w]hen reviewing a claim of error relating to jury instructions, this court views the instructions in the context of the overall charge." *United States v. Alcantar,* 832 F.2d 1175, 1178 (9th Cir.1987); *see United States v. Feldman,* 788 F.2d 544, 555 (9th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987); *United States v. Burgess,* 791 F.2d 676, 680 (9th Cir.1986). Both parties cite the above cases as authority for their arguments. However, those cases all dealt with only one reading of a set of instructions in which arguably there were problems with a specific portion of the instructions. Here the problem arises

because the same instructions were given three times correctly and only once incorrectly.

■ The government argues that the subsequent readings cured the problems in the earlier-given instruction. We believe that this is probably correct. Nonetheless, taken as a whole, the series of instructions were somewhat confusing. The jury was never told to ignore the mistake with respect to the burden of proof. In *Francis v. Franklin,* 471 U.S. 307, 322, 105 S.Ct. 1965, 1975, 85 L.Ed.2d 344 (1985), the Supreme Court found that "[l]anguage that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity. A reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict." While the Lees do not argue that the instruction was constitutionally infirm, the reasoning of *Francis* is sound. We confronted a similar issue in *United States v. Padilla,* 525 F.2d 308, 309 (9th Cir.1975). There, the lower court had initially instructed the jury that an essential element of conspiracy is that "the accused or any of them" willfully became members of the conspiracy. Upon objection by the defense counsel, instructions that omitted the "or any of them" were reread. The defense did not object to the reinstruction on the ground of jury confusion. Furthermore, it was made clear to the jury that the second instruction superseded the first and that the first instruction should be disregarded. Thus, the instructions were not subject to challenge. In *United States v. Crawford,* 576 F.2d 794 (9th Cir.), *cert. denied,* 439 U.S. 851, 99 S.Ct. 157, 58 L.Ed.2d 155 (1978), an instruction was similarly cured before closing argument and after conference with the attorneys. The court found it "reasonably clear that the jury knew it to be a corrective and superseding instruction." *Id.* at 799.

In this case the Lees did not contend that Baluyot ever threatened them in any way (and one count on which they were convicted was of a $1000 payment to him). And although there

were weak evidentiary proffers that might indicate that Dutton had a possible motive to threaten Western, there were no proffers or evidence that he ever did actually threaten Western.

Like clarity does not exist in this case. The instructions given the third and fourth time were not clearly "corrective and superseding." Arguably this lack of clarity left the jury somewhat uncertain and, thus, arguably constitutes error.

Nonetheless, this error, if such it be, was harmless given the overwhelming evidence of guilt presented at trial. With nonconstitutional errors the test is "whether the prejudice resulting from the error was more probably than not harmless." *United States v. Barrett,* 703 F.2d 1076, 1081–82 (9th Cir.1983). That test is met here. The Lees would have been found guilty without regard to the fixing of the burden of proof.

There was no evidence of any threat on the part of Dutton or any other official that supports the Lees' version of events. The jury verdicts make this plain. In one count, the jury found the Lees guilty of giving Baluyot a $1000 bribe in July 1984. On other counts, they found the Lees guilty of making payments from November 1984 through March 1985. The evidence showed that Dutton never discussed payments with the Lees until April 1985. Thus, the jury's verdicts indicate that the Lees were paying bribes prior to the time they claim Dutton threatened them. Thus, no reasonable jury could conclude that the payments were made because of "economic coercion."

### B. *Evidentiary Rulings*

█ The Lees appeal the district court's evidentiary rulings with respect to four types of proffered evidence: (1) evidence about Richard Dutton's relationship with Karen Watson and his alleged imposition of higher deductions after Watson was fired by Western; (2) evidence regarding meetings between Brad Lee and Dutton's supervisor and the supervisor's inaction in the face of Dutton's alleged harassment; (3) evidence of correspondence between Brad Lee and Dutton's supervisor regarding Dutton's alleged harassment; and (4) evidence regarding allegedly "false, biased and arbitrary" deductions taken by Dutton. The Lees argue that these proffers would

have established that their alleged fear of Dutton was genuine. The unadmitted evidence, they claim, would have helped establish a pattern of Dutton's coercive and arbitrary actions and motives. The district court's rulings on these proffers were on the basis of irrelevancy, hearsay, and scope.

"Evidentiary rulings are reversed for abuse of discretion and will not be reversed absent some prejudice. To reverse, we must say that more probably than not, the error tainted the verdict." *Kisor v. Johns-Manville Corp.,* 783 F.2d 1337, 1340 (9th Cir.1986) (citation omitted); *see United States v. Emmert,* 829 F.2d 805, 808 (9th Cir.1987). After review of the trial transcript, we cannot say the district court abused its discretion by any of its evidentiary rulings. Moreover, the evidentiary proffers made in this case could not have affected the verdict for the same reason the "burden of proof" jury charges were harmless error. No evidence or proffer went to any threat on the part of Dutton. While it is true that these proffers might have shown a possible motive of Dutton to harass Western, there is no evidence of a threat by Dutton of any kind. Thus, it cannot be said that these proffers probably would have affected the verdicts.

### C. *Entrapment Instruction*

█ Finally, James Lee argues that the trial court abused its discretion by refusing to give an entrapment instruction. To obtain such an instruction the defendant must present evidence that a government agent induced him to commit the illegal act which the defendant was not predisposed to commit. *United States v. Busby,* 780 F.2d 804, 806 (9th Cir.1986). "The trial court will instruct on entrapment only if the defendant presents some evidence of *both* elements of the entrapment defense." *Id.* (emphasis added); *see United States v. Brandon,* 633 F.2d 773, 778 (9th Cir.1980); *United States v. Glaeser,* 550 F.2d 483, 486–87 (9th Cir.1977).

█ Review of the record indicates that Lee did not present evidence sufficient to satisfy either element. To obtain the bene-

fit of the instruction, Lee would have had to show that he was induced by a government agent, Dutton. The payments by the Lees to Baluyot and Dutton before Dutton had ever discussed the bribes with them are inconsistent with any inducement by Dutton. Dutton, to repeat, first discussed bribes with the Lees in March 1985, five months after he first received money through Baluyot and nine months after Baluyot had first received bribes.

Lee points out that "the trial judge must give the instruction if there is some evidence of government inducement." *United States v. Barry*, 814 F.2d 1400, 1402 (9th Cir.1987); *see United States v. Shapiro*, 669 F.2d 593, 598 (9th Cir.1982). But "[i]nducement requires more than mere suggestion or solicitation by a government agent." *Barry*, 814 F.2d at 1402 n. 2 (citing *United States v. Reynoso–Ulloa*, 548 F.2d 1329, 1336 (9th Cir.1977), *cert. denied*, 436 U.S. 926, 98 S.Ct. 2820, 56 L.Ed.2d 769 (1978)). The facts are that there is absolutely no evidence that Dutton approached the Lees until the scheme had been underway for a number of months. There was no abuse of discretion by the trial court in refusing to give an entrapment instruction. There was nothing in the record to indicate that any government agent had induced the Lees to commit the crime.

 James Lee also fails to meet the "no predisposition" prong of the entrapment defense.[3] The evidence clearly demonstrated that the defendants were predisposed to commit the crime; it showed no reluctance on the part of the Lees to engage in the bribery scheme. *See United States v. Rhodes*, 713 F.2d 463, 467 (9th Cir.), *cert. denied*, 464 U.S. 1012, 104 S.Ct. 535, 78 L.Ed.2d 715 (1983), 465 U.S. 1038, 104 S.Ct. 1314, 79 L.Ed.2d 711 (1984). The Lees approached Baluyot with their scheme and

they pushed him to recruit Dutton after their own attempts had failed. Furthermore, there was evidence of a series of payments to both of them. Finally, the defense never presented any character evidence with regard to James Lee. Thus, no instruction on entrapment was warranted.

AFFIRMED.

---

3. Courts have identified several factors as being relevant to predisposition. In *United States v. Reynoso–Ulloa*, 548 F.2d 1329, 1336 (9th Cir. 1977), *cert. denied*, 436 U.S. 926, 98 S.Ct. 2820, 56 L.Ed.2d 769 (1978), this court said that "the character or reputation of the defendant, including any prior criminal record; whether the suggestion of the criminal activity was initially made by the Government; whether the defendant was engaged in the criminal activity for profit; whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and the nature of the inducement or persuasion" were all important. It went on to say that the "most important factor ... is whether the defendant evidenced reluctance to engage in criminal activity which was overcome by repeated Government inducement." *Id.*