**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Salvador SOTELO–MURILLO, Defendant–Appellant.**

No. 85–5291.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 3, 1989.

Decided June 14, 1989.

As Amended Oct. 4, 1989.

Salvador Sotelo Murillo, Metropolitan Detention Center, Los Angeles, Cal., pro se.

Stephen Wolfe, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before FLETCHER, NELSON and NORRIS, Circuit Judges.

FLETCHER, Circuit Judge:

Sotelo was convicted of two counts of distribution of heroin in violation of 21 U.S.C. § 841(a)(1). He appeals the conviction, arguing that the court erred in (1) failing to instruct the jury on the defenses of entrapment and outrageous government conduct; (2) failing to instruct the jury concerning the alleged felony conviction of a testifying government informant; and (3) admitting expert testimony relating to the typical life-style of brokers of Mexican brown heroin. Because the district court erred in failing to instruct the jury on entrapment, we reverse.

## FACTS

Sotelo's arrest and conviction arose from a DEA sting operation in which Sotelo delivered heroin to DEA agents posing as narcotics purchasers. The sequence of events culminating in Sotelo's conviction began in February of 1985, when Rogaciano Correa, a paid informant of the DEA, telephoned Sotelo and arranged to meet him at a restaurant. Correa and Sotelo were born in the same town in Mexico, and had known each other for thirty-five years. However, before the meeting in February of 1985, they had not seen each other for seven or eight years.

A few weeks later, Correa again phoned and met Sotelo. According to Correa's testimony, during that meeting, Sotelo said that he sold large quantities of cocaine, heroin, and marijuana, and that he had a legitimate business which he used as a front for his drug trafficking. In April, Correa and Sotelo again met. On this occasion, Correa introduced Sotelo to an undercover DEA agent, who discussed with So-

telo the sale of 25 kilograms of cocaine. These negotiations fell through when Sotelo requested that the agent "front" the cocaine to him.

Correa and Sotelo met again in early August, and Correa informed Sotelo that he had long-time friends, a Colombian and a Cuban, who moved large quantities of drugs. According to Correa, Sotelo expressed an interest in meeting these friends. On August 19, Correa introduced Sotelo to one of these "friends," DEA Agent Efrain de Jesus. Sotelo informed de Jesus that he wanted to purchase cocaine, and inquired about the amount available, and the going price. When Sotelo complained about the quoted price, de Jesus said Sotelo would have to talk to de Jesus's "boss" to get a better price.

Later that evening, Sotelo met with de Jesus and a second DEA informant, Armando Barrios, who played the role of de Jesus's boss. While speaking with Barrios, Sotelo raised the subject of heroin. He informed them that he had 250 grams of heroin for sale as a sample. He took the sample from his pocket and passed it under the table to Correa, who gave it to the agents. Sotelo then told the agents that he was a broker, and proposed that the agents buy heroin from him before he would buy cocaine from them.

Over the next few days, Sotelo had Correa arrange a sale of 250 grams of heroin to the agents. The sale took place on August 23. Sotelo met the agents in a restaurant. After the agent flashed the purchase money to Sotelo, they arranged that Sotelo would send the heroin to the agents with Correa, and that after they tested it, they could send the money to Sotelo at a second restaurant. Correa delivered the heroin, and the agents arrested Sotelo at the second restaurant.

Sotelo's story is that he had loaned Correa $20,000 in 1979, and that he had been unsuccessful in getting the money back from Correa. In the February 1985 meeting, Sotelo asked Correa for the money. Correa allegedly told Sotelo that he worked for the DEA in Mexico, and would steal some cocaine to get the money. Sotelo testified that in the March 1985 meeting, Correa told Sotelo that he would be paid as soon as Correa's partner sold some cocaine that had been stolen in Mexico.

Sotelo also contends that Correa later approached him with the story that he had some friends who were big Colombian sellers. Correa allegedly asked Sotelo to pose as a purchaser of drugs. Sotelo testified that he initially refused, but ultimately relented when informed that it was the only way to get his money back. According to Sotelo, Correa was the source of the heroin sample provided to the DEA officer on August 19, and the package sold on August 23 was placed in Sotelo's truck by Correa. Sotelo contends that Correa told him he would not have to handle any drugs, and that the only thing he would have to do would be to pick up the money.

At the close of the defense's case, the trial judge stated that there had been no evidence of entrapment, and that no entrapment instruction would be given. The jury entered a verdict of guilty on both counts. Sotelo filed a timely notice of appeal. We have jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

### I. FAILURE TO GIVE AN ENTRAPMENT INSTRUCTION

It is well-settled that a criminal defendant is entitled to a jury instruction "on any defense which provides a legal defense to the charge against him and which has some foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." *United States v. Yarbrough*, 852 F.2d 1522, 1541 (9th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 171, 102 L.Ed.2d 140 (1988). *See also United States v. Ibarra–Alcarez*, 830 F.2d 968, 973 (9th Cir.1987) (a defendant is entitled to an instruction covering a theory of defense if it has a basis in law and there is some foundation for it in the evidence). Where a defendant's requested instruction is supported by some evidence, a trial court's failure to give it is reversible error. *Yarbrough*, 852 F.2d at

1541; *United States v. Escobar de Bright*, 742 F.2d 1196, 1201 (9th Cir.1984) ("The right to have the jury instructed as to the defendant's theory of the case is one of those rights 'so basic to a fair trial' that failure to instruct where there is evidence to support the instruction can never be considered harmless error.") (citations omitted).

■ A defendant is entitled to an entrapment instruction if he or she can present some evidence that (1) a government agent induced him or her to commit an illegal act that (2) he or she was not predisposed to commit. *United States v. Lee*, 846 F.2d 531, 534 (9th Cir.1988). A defendant must present evidence on both elements of the defense, *id.*, but only *"slight* evidence is needed to create a factual issue and get the defense to the jury." *United States v. Fleishman*, 684 F.2d 1329, 1949 (9th Cir.), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982) (emphasis added).

In this case, the district court determined that Sotelo's requested entrapment instruction was not warranted on the basis of the evidence presented. Sotelo contends that this was error. Before addressing the merits of Sotelo's claim, we address the proper standard of review.

## A. Standard of Review

There is an apparent split in Ninth Circuit authority over the proper standard of review of the district court's determination that a jury instruction on the defendant's theory of the case is not warranted by the evidence. Some cases involving challenges to the district court's refusal to give entrapment instruction use an abuse of discretion standard. *See, e.g., Lee*, 846 F.2d at 534; *United States v. Busby*, 780 F.2d 804, 806 (9th Cir.1986); *Fleishman*, 684 F.2d at 1349. However, in other cases we have held that a trial court's determination that the evidence was insufficient to justify an instruction on the defendant's theory of defense is a question of law, and as such is reviewed *de novo*. *See United States v. Anguiano*, 873 F.2d 1314, 1317 (9th Cir. 1989) ("the issue of whether the evidence

was sufficient to support the giving of a multiple conspiracies instruction should be subject to *de novo* review"); *Ibarra–Alcarez*, 830 F.2d at 973 (failure to instruct jury on good faith reliance on advice of counsel); *United States v. Doubleday*, 804 F.2d 1091, 1093 (9th Cir.1986) (per curiam) (refusal to give self-defense instruction), *cert. denied*, 481 U.S. 1005, 107 S.Ct. 1628, 95 L.Ed.2d 201 (1987). *See also United States v. Brandon*, 633 F.2d 773, 778 (9th Cir.1980) (implicitly applying a *de novo* standard to refusal to give entrapment instruction).

An intra-circuit conflict may be resolved authoritatively only through en banc proceedings. *Tornay v. United States*, 840 F.2d 1424, 1427 n. 3 (9th Cir.1988); *Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1478–79 (9th Cir.1987) (en banc). If this case turned on the standard of review and we did not undertake en banc review, we would be faced with a situation in which we would have to "make an unsatisfactory choice between two opposing lines of authority, neither of which has an unimpaired claim to being the law of the circuit." *Greenhow v. Secretary of Health & Human Services*, 863 F.2d 633, 636 (9th Cir. 1988).

In light of *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984), it would seem that a district court's decision that the evidence is sufficient to warrant an entrapment instruction should be subjected to *de novo* review. *McConney* holds that questions of law and mixed questions of fact and law in which legal issues predominate are reviewed *de novo*. 728 F.2d at 1201, 1203. We previously have recognized that whether a criminal defendant has presented sufficient evidence to warrant a jury instruction on entrapment is predominantly a legal question. *See, e.g., Brandon*, 633 F.2d at 778 (the refusal to submit an entrapment instruction to the jury "constitutes a determination *as [a] matter of law* that the defense may not be raised") (emphasis add-

ed).[1]

Not only is the decision not to give an entrapment instruction predominantly a legal question, such a decision has constitutional overtones as well. As we noted in *Escobar de Bright,* a criminal defendant's right to an instruction on his or her theory of the case so implicates "fundamental constitutional guarantees," that failure to so instruct is *per se* reversible error. 742 F.2d at 1201–02. According to the principles set forth in *McConney,* this provides another rationale for *de novo* review. 728 F.2d at 1203 ("The predominance of factors favoring *de novo* review is even more striking when the mixed question implicates constitutional rights.").

In contrast, we can discern from the cases applying abuse of discretion review no rationale for application of that standard. *Lee,* 846 F.2d at 534, relies without explanation solely upon *Busby,* 780 F.2d at 806, which in turn relies solely upon the pre-*McConney Fleishman* case, 684 F.2d at 1343. *Fleishman,* in turn, relies without explanation upon *United States v. Shapiro,* 669 F.2d 593 (9th Cir.1982), and *United States v. Diggs,* 649 F.2d 731 (9th Cir.), *cert. denied,* 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981). Nothing in *Shapiro* remotely suggests the use of abuse of discretion review. *Diggs* merely cites, without explanation, *United States v. Glaeser,* 550 F.2d 483, 487 (9th Cir.1977), for the proposition that abuse of discretion is the appropriate standard. However, nothing in *Glaeser* suggests that this is the case. In fact, the language in *Glaeser* suggests just the opposite. The *Glaeser* court upheld a trial court's ruling against entrapment as a matter of law, despite the fact that reason expressed by the trial court was grounded in obsolete law. *Id.* at 487–88.[2]

In short, the line of cases, beginning with *Diggs,* which authorizes abuse of discretion review is of questionable validity from its very inception. Moreover, to the extent that *Diggs* and *Fleishman* were ever good precedent, they were undermined by *McConney. See Ibarra–Alcarez,* 830 F.2d at 973 n. 1. Obviously, we are persuaded to the view that a district court's decision that an entrapment instruction is not warranted by the evidence should be reviewed *de novo.* However, we have concluded that the result in this case does not turn on the standard of review and thus do not decide the question here.[3]

## B. Sufficiency of Sotelo's Evidence of Entrapment

■ The dispute in this case is whether Sotelo met the burden of establishing sufficient evidence to create a jury question. The record reveals sufficient evidence of entrapment to warrant a jury instruction.

### Inducement

Sotelo testified that, in 1979, he loaned Correa a substantial amount of money. This testimony was corroborated by other defense witnesses. Sotelo also testified that he attempted, and failed, in early 1985 to contact Correa regarding this debt. However, Correa then contacted Sotelo. Sotelo stated that Correa claimed to be a DEA agent, and that he had a plan to obtain the money owed Sotelo. According to Sotelo, Correa suggested that Sotelo meet with a major drug dealer, posing as a major purchaser. Correa would broker a fake deal, pocketing a $25,000 advance commission which would be used to repay Sotelo. Sotelo testified that he initially re-

---

**1.** A recent panel addressing the entrapment instruction issue, while acknowledging, but not resolving, the conflict in our case law, noted that "[b]efore the issue of entrapment may reach the jury the trial judge must decide that there is a genuine issue of fact for the jury." *United States v. Hoyt,* 879 F.2d 505, 509 (9th Cir.1989).

**2.** It is also noteworthy that neither *Diggs* nor *Fleishman* cited *Brandon,* 633 F.2d at 778, a case which also clearly suggests *de novo* review.

**3.** This court recently noted, as we do in this case, the split of authority on the appropriate standard for reviewing a refusal to give an entrapment instruction, *Hoyt,* 879 F.2d at 509, and likewise found it unnecessary to resolve because the result was the same under either *de novo* or abuse of discretion review. *Id.* at 509–10 (refusal to give entrapment instruction not error).

sisted this plan, but eventually relented after Correa continued to contact him, and continued to insist that this was the only way to obtain repayment of the loan.

■ The Government argues that Sotelo was not "induced," as that term is properly understood in analyzing entrapment, to commit the crime. Essentially, the Government's position is that when a defendant enters into a criminal enterprise with a motive of pecuniary gain, he cannot meet the inducement requirement of the entrapment defense. The Government's argument is apparently based on a misreading of the cases. Admittedly, there is some language in *United States v. Citro*, 842 F.2d 1149, 1152 (9th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 170, 102 L.Ed.2d 140 (1988), suggesting that where the only inducement offered is money, predisposition to commit the crime may be inferred. However, *Citro* does not deal directly with the inducement element of the defense and, more important, merely involved the affirmance of a district court's denial of the defense's motion for acquittal based upon entrapment as a matter of law. 842 F.2d at 1152. In other words, the *Citro* court, viewing the evidence in the light most favorable to the Government, merely concluded that a rational trier of fact could find that Citro was predisposed to commit the crime. *Id.* The procedural posture of the other cases relied upon by the Government was identical. *See United States v. Esquer-Gamez*, 550 F.2d 1231, 1234 (9th Cir. 1977); *United States v. Reynoso-Ulloa*, 548 F.2d 1329, 1336–40 (9th Cir.1977), *cert. denied*, 436 U.S. 926, 98 S.Ct. 2820, 56 L.Ed.2d 769 (1978).

None of the cases cited by the Government even indirectly suggests that a pecuniary motive precludes, as a matter of law, a finding of inducement. In fact, *Reynoso-Ulloa* approves an entrapment instruction containing the following language: "[t]he terms 'inducement or persuasion,' in the law of entrapment, may include the promise of money or other economic bene-

fit." 548 F.2d at 1339–40. Sotelo presented some evidence that Correa induced him to become involved in this scheme through the promise of pecuniary gain. This testimony is sufficient to create a jury question on the issue of inducement. Thus, the validity of the district court's decision not to instruct the jury on entrapment turns on the principal element of the entrapment defense, Sotelo's predisposition to commit the crime.

*Predisposition*

In evaluating whether a defendant is predisposed to commit a particular crime, the following factors are examined:

> the character or reputation of the defendant, including any prior criminal record; whether the suggestion of the criminal activity was initially made by the Government; whether the defendant was engaged in the criminal activity for profit; whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and the nature of the inducement or persuasion supplied by the Government.

*Busby*, 780 F.2d at 807. Although no single factor is controlling, the defendant's reluctance to engage in the criminal activity is the most important factor. *Id.*

The record contains some evidence relating to the *Busby* factors which is favorable to Sotelo. He testified that he is a licensed building contractor, and that he had no involvement in narcotics prior to the events involving Correa. The Government does not argue that he has prior drug convictions, and presented no evidence of prior involvement in narcotics. In addition, the record indicates that Correa initially suggested the illegal activity. On the other hand, the nature of the inducement was purely monetary, and Sotelo was engaged in the activity for pecuniary gain.[4]

Sotelo's testimony that he initially refused to "pose" as a drug broker, but relented when Correa persuaded him that it was the only way to obtain repayment of

---

4. Sotelo's argument that he did not engage in the activity for profit because the money he was

to receive was owed to him is not persuasive.

the loan suggests at least some reluctance to engage in this criminal enterprise. Also, if Sotelo's testimony is believed, Correa told him what to say during the August meetings with de Jesus and Barrios, and provided Sotelo with the drug samples to give the DEA agents.[5] While the trial judge may have viewed Sotelo's testimony as incredible or insufficient, it is clear that Sotelo did provide some evidence of entrapment. The weight and credibility of the conflicting testimony are issues properly resolved by the jury. Sotelo was entitled to an entrapment instruction.

## II. OUTRAGEOUS GOVERNMENT CONDUCT

■ Sotelo argues that the court erred in not giving an "outrageous government conduct" instruction. This argument is without merit. Although outrageous government conduct is sometimes referred to as a "defense," it is not an affirmative defense such as entrapment. *United States v. Montilla*, 870 F.2d 549, 551 n. 1 (9th Cir.1989). This "defense" is really an argument that the government's conduct was so outrageous that due process principles bar the government from using the courts to obtain a conviction. *Id.* (citing *United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973)). This argument is ordinarily invoked in an effort to dismiss the indictment. *See e.g., Citro*, 842 F.2d at 1152. Whether the government's conduct is sufficiently outrageous to violate due process is a question of law reviewed *de novo*. *Id.* It is not an issue for the jury and Sotelo was not entitled to a jury instruction on

this issue. *United States v. Prairie*, 572 F.2d 1316, 1319 (9th Cir.1978).

## III. FELONY CONVICTION INSTRUCTION

■ Sotelo argues that the district court erred in refusing to give an instruction to the jury concerning Correa's alleged felony conviction. Jury instructions are considered as a whole to determine whether they are adequate. *United States v. Burgess*, 791 F.2d 676, 680 (9th Cir.1986). The trial judge has substantial latitude in tailoring the instructions, and challenges to the particular formulation adopted by the court are reviewed for abuse of discretion. *Id.* Sotelo claims that much of Correa's testimony was fabricated, and that the requested instruction would have aided the jury in assessing Correa's credibility. The Government points out that defense counsel's cross-examination of Correa brought out that he had been convicted of a crime in Mexico, and that he had spent more than one year in prison, but did not establish that he had been convicted of a felony. It thus argues that the factual predicate for such an instruction had not been established.

In any event, the jury knew about the facts of the conviction, and the court gave a general credibility instruction. The court also gave an instruction relating specifically to the credibility of Correa.[6] Under the circumstances, these instructions are sufficient to obviate the need for a separate felony conviction instruction. *United States v. Kearney*, 560 F.2d 1358, 1365 (9th

---

**5.** The Government did introduce testimony suggesting a predisposition to commit the crime. Correa testified that Sotelo told him that he sold large quantities of drugs, and that his business was merely a front for his drug activities. However, Sotelo attempted to discredit Correa's testimony through introduction of evidence of Correa's reputation for untruthfulness, as well as testimony from Correa's brother suggesting that Correa "set up" Sotelo. The Government also introduced evidence of Sotelo's familiarity with the drug trade. Although such evidence is considered important in finding predisposition, *see, e.g., Hoyt*, 879 F.2d at 509–10; *Fleischman*, 684 F.2d at 1343; *Brandon*, 633 F.2d at 778, Sotelo arguably refuted it through testimony that Cor-

rea told him what to do and say. In short, there is conflicting evidence about Sotelo's predisposition to commit the crime.

**6.** The court instructed:

You have heard evidence about the character and reputation of Rogaciano Correa, a witness. You may consider this evidence *along with other pertinent evidence* in deciding whether or not to believe this witness's testimony and how much weight to give it. Reporter's Transcript at 330 (emphasis added). This language obviously invites the jury to consider the evidence relating to Correa's conviction in Mexico.

Cir.), *cert. denied,* 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977). The district court did not abuse its discretion in refusing to give a separate instruction.

## IV. EXPERT TESTIMONY

 Sotelo contends that the trial court abused its discretion in admitting, over defense counsel's objection, expert testimony from DEA Agent Anthony Ricevuto that brokers of Mexican brown heroin often use small businesses as fronts, and live low-key lives in the community. Ricevuto also testified that such dealers often lack the extravagant life-style sometimes associated with cocaine dealers. We note that the district court has broad discretion to admit or exclude expert testimony. The decision to allow DEA Agent Ricevuto's testimony is reviewed for abuse of discretion. *United States v. Gillespie,* 852 F.2d 475, 478 (9th Cir.1988).

Expert testimony in criminal trials relating to the "typical" characteristics of certain classes of criminals is suspect. *See, e.g., Gillespie,* 852 F.2d at 478; *United States v. Hernandez–Cuartas,* 717 F.2d 552, 555 (11th Cir.1983). However, this type of evidence is sometimes permissible if the defendant "opens the door" by introducing testimony suggesting that he or she possesses certain characteristics, and that these characteristics are inconsistent with an inference of guilt. For example, in *United States v. Khan,* 787 F.2d 28, 34 (2d Cir.1986), the Second Circuit upheld the introduction of expert testimony that Pakistani drug dealers do not need large sums of money to deal in large quantities and that they tend to dress like other Pakistanis. This evidence was permissible because it was introduced to rebut the defendant's argument that his apparent lack of wealth and manner of dress were inconsistent with the government's portrayal of him as a major drug dealer. *Id.*

The record indicates that Ricevuto's testimony was introduced to respond to defense counsel's cross-examination in which, as the district judge noted, "you tried to make your client look like a pauper that rode in a pickup truck." Ricevuto's testimony is responsive to the inferences defense counsel attempted to create. It was not an abuse of discretion to allow this testimony.

## CONCLUSION

Sotelo presented sufficient evidence of entrapment to warrant a jury instruction on that theory of defense. The trial court's refusal to give such an instruction mandates reversal. Sotelo was not entitled to an instruction on outrageous government conduct. The district court did not err in failing to give a "convicted felon" instruction with respect to Correa, nor did it err in allowing the expert testimony of Agent Ricevuto.

REVERSED.