26 F.3d 133
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alicia CARRILLO DE MOLINA, Defendant-Appellant.
 No. 92-10025.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 14, 1994.
Decided June 6, 1994.
 
 Before: SCHROEDER, D.W. NELSON, and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I.
 
 2
 On April 21, 1991, Appellant-Defendant Alicia Carrillo De Molina ("Carrillo") attempted to walk through the Nogales port of entry carrying approximately one kilogram of heroin strapped around her body. An unidentified Mexican woman telephoned Nogales Police Officer Eddie Rosas and told him that Carrillo would be walking across the border carrying the drugs. Immigration Inspector Supervisor Sergio Cota and Senior Customs Inspector John Rose arrested Carrillo. In addition to the drugs, Carrillo was carrying about $900 in cash.
 
 
 3
 A jury convicted Carrillo of importing in excess of 1 Kilogram of heroin and of possessing in excess of 1 Kilogram of heroin with intent to distribute it in violation of 21 U.S.C. Secs. 951(A)(1) and 21 U.S.C. Secs. 841(a)(1) and 841(b)(1)(A). Carrillo was sentenced to 90 months in prison and 60 months of supervised release.
 
 II.
 
 4
 The district court conducted a hearing on Carrillo's second motion to compel the government to reveal the identity of the informant. In denying the motion, the district court ruled that Carrillo had failed to show that the informant's identity would have been relevant to an entrapment defense. The court reasoned that, because Carrillo could not show that the informant was acting as a government agent, she had not provided an "overwhelming reason" for disclosure and that, in light of the potential security problems to the informant, the government was not compelled to reveal her identity.
 
 
 5
 The denial of a motion to compel the disclosure of an informant is reviewed for abuse of discretion. United States v. Williams, 898 F.2d 1400, 1402 (9th Cir.1990).
 
 
 6
 If Carrillo could have shown that the informant's identity was relevant to an entrapment defense, the government would have had to disclose that information. See Rovario v. United States, 353 U.S. 53, 62 (1957); see also, Williams, 898 F.2d at 1402 (citing cases).
 
 
 7
 To prevail on an entrapment defense, Carrillo would have had to show that (1) she was not predisposed to commit the crime; and (2) the informant was a government agent. The district court ruled that the informant not a government agent as a matter of law and therefore concluded that disclosure of the informant's identity would not have been helpful to the defendant's claim of entrapment.
 
 
 8
 The Ninth Circuit has "taken a narrow view of when someone is an agent." See U.S. v. Dickey, 924 F.2d 836, 840 (9th Cir.) (citing U.S. v. Busby, 780 F.2d 804, 806 (9th Cir.1986)), cert. denied, 112 S.Ct. 383 (1991). Under Busby, where the government was "wholly unaware of [the informant's] activities," no agency relationship can exist as a matter of law. Busby, 780 F.2d at 840. To establish an agency relationship, Carrillo would have had to show that the government supervised, directed, or oversaw the informant's activities. Id. The district court, however, reasonably believed the government's witnesses' testimony that the government's involvement prior to Carrillo's arrest was limited to offering a $4,000 reward to anyone who would provide tips leading to the arrest of a drug dealer. When an informant acts solely on the government's public promise of a reward, there is no agency relationship as a matter of law. Thus, the district court did not err in concluding that Carrillo had not met its burden of showing that disclosing the identity of the informant would be relevant to an entrapment defense. See United States v. Spires, 3 F.3d 1234, 1238 (9th Cir.1993).
 
 
 9
 For the first time on appeal, Carrillo argues that, on this record, the court should have at least examined the informant in camera before determining that the officers were telling the truth.
 
 
 10
 The district court does not have an affirmative duty to conduct an in camera review of unidentified informants. Therefore, although generally courts should grant the defendant's request for an in camera review, id. at 1238, because Carrillo failed to request it, the court was not required to interview the informant sua sponte.
 
 
 11
 Finally, we agree with Carrillo that the district court stated erroneously that Carrillo needed to articulate an "overwhelming reason" for disclosure. Because Carrillo could not establish that disclosure of the informant's identity was even relevant to her defense, however, this error was harmless.
 
 III.
 
 12
 Carrillo contends that the district court abused its discretion when it instructed the jury not to make any inferences from the informant's failure to testify.
 
 
 13
 The district court's formulation of jury instructions is reviewed for abuse of discretion. United States v. Joetzki, 952 F.2d 1090, 1095 (9th Cir.1991); United States v. Bautista, 509 F.2d 675, 678 (9th Cir.), cert. denied, 421 U.S. 976 (1975).
 
 
 14
 By instructing the jury not to make any inferences from the informant's failure to testify the district court essentially told the jury that Carrillo was not entitled to a "missing witness" instruction. Consequently, whether the district court's formulation of the jury instruction constituted an abuse of discretion depends on whether or not Carrillo was entitled to a "missing witness" instruction.[1]
 
 
 15
 Because Carrillo had failed to show that the identity of the informant should have been disclosed, the district court properly denied her request for a "missing witness" instruction. Accordingly, the district court's formulation of the jury instruction was not an abuse of discretion.
 
 IV.
 
 16
 During closing argument, the prosecutor told the jury that the informant's identity had not been disclosed to avoid putting her life at risk. Although Carrillo's trial attorney did not raise an objection, Carrillo argues, for the first time on appeal, that the prosecutor's statement constituted prejudicial misconduct.
 
 
 17
 If at trial, Carrillo's attorney had made a motion for a mistrial based on prosecutorial misconduct and the district court had denied her request, we would review the court's denial for abuse of discretion. See United States v. Yarborough, 852 F.2d 1522, 1538 (9th Cir.), cert. denied, 488 U.S. 866 (1988). But when, as here, the trial attorney failed to object in a timely manner, the appropriate standard of review is plain error. United States v. Christophe, 833 F.2d 1296, 1300 (9th Cir.1987).
 
 
 18
 A prosecutor's statements in closing argument require a new trial if (1) the statements did not constitute "reasonable inferences from the evidence" and (2) it is more probable than not that they prejudiced the defense. See Yarborough, 852 F.2d at 1539 (citing United States v. Dorr, 636 F.2d 117, 120 (5th Cir.1981)).
 
 
 19
 On the basis of this record, we conclude that there was no evidence to support the inference that the informant's life was in danger. We also conclude, however, that the statements were not shown to be sufficiently prejudicial to warrant reversal on this ground. The prosecutor did not accuse Carrillo of posing a threat to the informant's life and, thus, it is unlikely that the statement had a negative effect on the jury's perception of Carrillo. Second, the district court specifically instructed the jury not to infer anything from the informant's failure to testify. Consequently, the effect of the prosecutor's unsupported claim on the verdict was at most marginal, and, therefore, Carrillo's conviction cannot be reversed on this ground.
 
 V.
 
 20
 At trial, the prosecutor told its expert witness, Agent Gomez, "to assume as a fact that the defendant when she was arrested said that a man who she did not know told her to bring this item into the United States and he would pay her a minimum amount" and asked him whether "[b]ased on that fact and [his] knowledge of the drug business, ... that [was] a likelihood?" ER at 68. Gomez responded that it was not. ER at 69.
 
 
 21
 The government concedes that if the expert testimony had been used to impeach Carrillo's credibility, it would have been an error to admit it, albeit a harmless one. The government, however, contends that the expert testimony was introduced to prove modus operandi and thus was admissible.
 
 
 22
 The admissibility of expert testimony is reviewed for abuse of discretion. United States v. Barnard, 490 F.2d 907, 913 (9th Cir.1973), cert. denied, 416 U.S. 959 (1974); see also United States v. Lui, 941 F.2d 844, 846 (9th Cir.1991).
 
 
 23
 The expert testimony was inadmissible whether it was introduced to show modus operandi or to impeach Carrillo's testimony. Under the facts of this case, however, we hold that the admission of the testimony was harmless error.
 
 
 24
 Gomez' testimony constituted "drug courier profile" evidence. Reid v. Georgia, 448 U.S. 438, 440 (1980) (per curiam) (defining profile evidence as "a somewhat informal compilation of characteristics believed to be typical of persons carrying narcotics.") In United States v. Lui, 941 F.2d at 847, this Court held that drug courier profile evidence only is admissible (1) as rebuttal testimony where the defendant has "opened the door"; or (2) "to establish modus operandi, but only in exceptional, complex cases." Id. at 848 (emphasis added). Because this case is neither exceptional nor complex, the district court should not have allowed the government to prove Carrillo's guilt by generalized data of typical drug deals.
 
 
 25
 Gomez' testimony that Carrillo must have known she was carrying the drugs, was the most prejudicial statement he made as it was directly relevant to an element of the crime. It is undisputed, however, that Carrillo knew she was carrying drugs and, thus, the error was harmless.
 
 
 26
 Gomez also testified that, based on his general knowledge of drug couriers, Carrillo was probably an expert and she probably made a significant amount of money. In light of all the evidence against Carrillo, these remarks more probably than not had no effect on the jury's determination of guilt. Accordingly, any error was harmless.
 
 VI.
 
 27
 Carrillo contends for the first time on appeal, that the alleged absence of an interpreter at a pretrial hearing violated her rights under the fifth and sixth amendments and under 28 U.S.C. Sec. 1827.
 
 
 28
 Because Carrillo's trial attorney failed to raise this objection in the district court, this issue is deemed waived. Accordingly, we decline to reach the merits of this claim on appeal.[2]
 
 CONCLUSION
 
 29
 For the reasons stated above, we AFFIRM Carrillo conviction.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Carrillo argues that the district court's jury instruction was wrong regardless of whether Carrillo was entitled to a missing witness instruction. This argument, however, violates the rules of logic. Either the jury properly could have inferred something from the informant's failure to testify or not. There is no middle ground
 
 
 [2]
 During the pretrial hearing, the government suggested that an interpreter be called, but Carrillo's trial attorney explicitly "waive[d] that requirement." ER at 27. Moreover, it is appropriate to deem the issue waived in this case because the defense attorney's failure to raise the issue at the district court created a factual dispute as to whether an interpreter was in fact present which we cannot resolve from this record