977 F.2d 594
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ricardo Remigio VAZQUEZ, Roberto Elias Mendez, Leonard
Lizalde, a/k/a Lenny, Juan Jose Rivas-Dias, Manual
Recio, Defendants-Appellants.
 Nos. 91-50041, 91-50069, 91-50076, 91-50079 and 91-50128.
*
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 2, 1992.
Decided Oct. 13, 1992.
 
 1
 Before D.W. NELSON and DAVID R. THOMPSON, Circuit Judges, and LYNCH, District Judge.**
 
 
 2
 MEMORANDUM***
 
 OVERVIEW
 
 3
 This case involves a conspiracy among ten defendants to import approximately 650 kilograms of cocaine into the United States from Guatemala. The appeals of five of the co-defendants are consolidated before this court. Appellants Vazquez, Mendez, and Lizalde appeal their convictions. Appellant Rivas-Dias appeals both his conviction and his sentence. Appellant Recio appeals his sentence. The convictions and sentences of all defendants are affirmed.
 
 PROCEDURAL BACKGROUND
 
 4
 On August 14, 1990, a federal grand jury returned a five count indictment against Ricardo Vazquez, Roberto Mendez, Leonard Lizalde, Juan Rivas-Dias, Manuel Recio, and five co-defendants.[1] The conspirators were charged with: (1) conspiracy to import 650 kilograms of cocaine into the United States; (2) conspiracy to possess with intent to distribute and to distribute 650 kilograms of cocaine; (3) aiding and abetting the importation of 650 kilograms of cocaine; (4) possession with intent to distribute 306 kilograms of cocaine; and (5) aiding and abetting others to carry five firearms in relation to a drug trafficking crime.
 
 
 5
 Defendant Recio pled guilty on the third day of trial to counts two and five of the indictment. The rest of the defendants whose appeals are consolidated here maintained their not guilty pleas throughout the course of the trial. The jury found Vazquez and Lizalde guilty on all five counts. Mendez was found guilty on counts two, four, and five, and not guilty on count one. Rivas-Dias was found guilty on all four counts (one, two, four, and five) charged against him. Vazquez was sentenced to 352 months, Lizalde to 360 months, Mendez to 295 months, Rivas-Dias to 352 months, and Recio to 295 months. This appeal followed.
 
 DISCUSSION
 
 6
 1. Did the district court err in not instructing the jury on entrapment as requested by defendants Vazquez and Rivas-Diaz?
 
 
 7
 The defense offered by Vazquez at trial was that he was entrapped into committing the crimes charged in the indictment by the repeated lobbying efforts of DEA informant Adam Cobb to covert a proposed marijuana deal into a cocaine deal. At the conclusion of the evidence, however, the district judge refused to give the jury an entrapment instruction, saying the defense had not made out a case of legal entrapment.
 
 
 8
 "A defendant is entitled to an entrapment instruction if he or she can present some evidence that (1) a government agent induced him or her to commit an illegal act that (2) he or she was not predisposed to commit." United States v. Sotelo-Murillo, 887 F.2d 176, 179 (9th Cir.1989) (citation omitted). The defendant must present evidence on both elements, but only slight evidence is necessary to create a factual issue and thus get the defense to the jury. Id. Failure to give an instruction that is supported by some evidence constitutes reversible error. Id. at 178.
 
 
 9
 The Ninth Circuit has not resolved the issue whether a district court's denial of a proposed jury instruction is reviewed de novo or for an abuse of discretion. United States v. Whitehead, 896 F.2d 432, 434 (9th Cir.), cert. denied, 111 S.Ct. 342 (1990). Compare United States v. Wagner, 834 F.2d 1474, 1486 (9th Cir.1987) (using de novo standard) with United States v. Busby, 780 F.2d 804, 806 (9th Cir.1986) (using abuse of discretion standard). Because the result in this case is the same under either standard, we need not resolve this conflict or call for an en banc.
 
 
 10
 As a preliminary matter, the parties dispute whether an entrapment defense was automatically foreclosed to Vazquez because of the undisputed evidence that he was predisposed to engage in a marijuana transaction. We express no opinion on this question because even if an entrapment defense was not automatically foreclosed to Vazquez, we agree that he was not entitled to an entrapment instruction.
 
 
 11
 "If a defendant is predisposed to commit a crime, an entrapment defense is unavailable, regardless of the inducement." United States v. Smith, 924 F.2d 889, 898 (9th Cir.1991). In evaluating whether a defendant is predisposed to commit a crime, this court considers (1) the character and reputation of the defendant, including any prior criminal record; (2) whether the suggestion of criminal activity was initially made by the government; (3) whether the defendant engaged in the criminal activity for profit; (4) whether the defendant evidenced reluctance to commit the offense, overcome only by repeated government inducement or persuasion; and (5) the nature of the inducement or persuasion supplied by the government. Id.
 
 
 12
 We recognize that Vazquez testified that he had no prior criminal record, that it was Cobb who suggested the idea of a cocaine transaction rather than a marijuana transaction, and that he felt reluctant to commit an offense involving cocaine. Vazquez also testified that he believed that he and Cobb had established a friendship and that their relationship led him to trust Cobb when Cobb insisted that a cocaine deal would help Vazquez straighten out his finances. Therefore, factors one and perhaps two and four might support a finding that Vazquez was not predisposed to commit a crime involving cocaine. On the other hand, Vazquez was one of the primary conspirators responsible for initially soliciting Cobb's assistance in a criminal narcotics transaction and continued actively to participate in the cocaine deal. Vazquez was also clearly willing to engage in a narcotics transaction, so this is hardly a case of the government luring an "unwary innocent" into committing a crime. United States v. Russell, 411 U.S. 423, 429 (1973). The government thus introduced significant evidence that Vazquez was predisposed to commit the crime.
 
 
 13
 Furthermore, Vazquez was engaged in the scheme for pecuniary gain. The nature of the inducement also weighs in favor of the government. Vazquez testified that Cobb urged importing cocaine rather than marijuana during approximately ten meetings and telephone calls--some initiated by Vazquez--because there was more money to be made in cocaine and it was easier to handle. Vazquez was admittedly already in the conspiracy for the money, however; the inducement of financial gain was not initiated by the government. Nor does the fact that Cobb suggested that a cocaine deal might be more profitable in some ten phone calls over the course of a month rise to the level of objectionable "persuasion, fraudulent representation, threats, coercive tactics, harassment, promises of reward or pleas based on need, sympathy or friendship" usually found to constitute government inducement. United States v. Fedroff, 874 F.2d 178, 184 (3rd Cir.1989); see also United States v. Esquer-Gamez, 550 F.2d 1231, 1234 (9th Cir.1977) (finding that defendant who agreed to sell cocaine after twenty government inquiries where the only government inducement was money was not entrapped).[2] " 'The defense of entrapment, while protecting the innocent from Government creation of crime, is unavailable to a defendant who, motivated by greed and unconcerned about breaking the law, readily accepts a propitious opportunity to commit an offense.' " Esquer-Gamez, 550 F.2d at 1234 (quoting United States v. Reynoso-Ulloa, 548 F.2d 1329, 1338 (9th Cir.1977)). Because of the fact that Vazquez was clearly involved for pecuniary gain, the evidence presented by the government that Vazquez was not in fact reluctant to commit the offense, and the extremely mild nature of the alleged inducement, we conclude that the district court did not err in refusing to give an entrapment instruction.
 
 
 14
 Rivas-Dias' claim that he was entitled to an entrapment instruction is utterly without merit. The only inducement Rivas-Dias cites pertains to conversations between Cobb and Vazquez; he offers no evidence that any government agent tried to induce him personally into participating in the conspiracy. We have "consistently held that the entrapment defense is available only to defendants who were directly induced by government agents." United States v. North, 746 F.2d 627, 630 (9th Cir.1984), cert. denied, 470 U.S. 1058 (1985). Because this circuit does not recognize the theory of derivative entrapment, United States v. Bonanno, 852 F.2d 434 (9th Cir.1988), cert. denied, 488 U.S. 1016 (1989), we reject Rivas-Dias' contention.
 
 
 15
 2. Did the district court err in not instructing the jury on Lizalde's mere presence defense to the conspiracy?
 
 
 16
 Lizalde alleges that he was prejudiced by the district court's failure to instruct the jury that more than mere presence at a scene and knowledge of a crime is required to find a defendant guilty of conspiracy. He argues that the district court should have told the jury that engaging in an overt act to further the conspiracy is a necessary element of the offense.
 
 
 17
 Lizalde's claim fails because the given instructions adequately covered the material elements of conspiracy and aiding and abetting. "A defendant is not entitled to any particular form of an instruction so long as the instructions given fairly and adequately cover the defendant's theories of defense." United States v. Solomon, 825 F.2d 1292, 1295 (9th Cir.1987), cert. denied, 484 U.S. 1046 (1988). The district judge here instructed the jury that before it could find a defendant guilty of conspiracy, it had to find that the defendant "willfully participated in the unlawful plan, with the intent to advance or further some object or purpose of the conspiracy." Moreover, the judge emphasized later that a defendant could be considered a conspirator if he "knowingly encourages, advises or assists" the unlawful scheme. The instructions thus make it sufficiently clear that active and willful participation was a necessary predicate for a finding of conspiracy. Cf. United States v. Weil, 561 F.2d 1109, 1112 (4th Cir.1977). Lizalde's lawyer in fact acknowledged at trial that the mere presence instruction emerges in one of the general conspiracy instructions.[3] We conclude that the jury instructions were sufficient.
 
 
 18
 3. Did the district court err in instructing the jury on constructive possession of cocaine?
 
 
 19
 Vazquez and Mendez argue that the district court improperly instructed the jury on the elements necessary to find that they were in constructive possession of the cocaine that Recio went to pick up in the industrial park. Vazquez objected to the final instruction (the "keys instruction") in particular, because he claimed that it enabled the jury to find possession based solely on Recio's act of taking the keys to the van containing the cocaine.
 
 
 20
 We review "whether a jury instruction was an accurate statement of the law de novo." United States v. Terry, 911 F.2d 272, 278 (9th Cir.1990). We " 'determine whether, viewing the instructions as a whole, the court gave adequate instruction on each element of the case to ensure that the jury fully understood the issues,' and to determine 'whether the instruction is misleading or states the law incorrectly to the prejudice of the objecting party.' " United States v. Espinosa, 827 F.2d 604, 614 (9th Cir.1987) (quoting Kisor v. Johns-Manville Corp., 783 F.2d 1337, 1340 (9th Cir.1986)), cert. denied, 485 U.S. 968 (1988).
 
 
 21
 We believe that when read as a whole the jury instructions adequately stated the law on constructive possession. The instructions clearly set out the requirements that a defendant intentionally have dominion or control over the contraband and know of its existence. Terry, 911 F.2d at 279. The defendants' reliance on Terry as support for their argument that the instruction was insufficient is misplaced. In Terry, the judge, after being asked by the jury for clarification, told the jury essentially that constructive possession simply required that the defendant have the power to control the contraband. He also told the jury that he did not like the emphasis on "intention" in the earlier correct instruction he had given on constructive possession, thus directing the jury to rely exclusively on the erroneous instruction. In this case, the judge never gave the keys instruction in isolation; he always prefaced that instruction with the more detailed instruction on constructive possession. Cf. United States v. Chambers, 918 F.2d 1455, 1459 (9th Cir.1990) (distinguishing Terry in part because judge correctly emphasized importance of finding that defendant actually controlled the contraband).
 
 
 22
 Even if the instruction were erroneous, the error was harmless in light of the overwhelming evidence that Recio actually had constructive possesion of the cocaine. United States v. Rubio-Villareal, 927 F.2d 1495, 1501 (9th Cir.1991) (endorsing harmless error standard); United States v. Herbert, 698 F.2d 981, 987 (9th Cir.) (refusing to reverse conviction despite erroneous jury instruction because overwhelming evidence supported the verdict), cert. denied, 464 U.S. 821 (1983). Recio knew that the van contained cocaine because he examined the contents of one of the bundles. Courts have found constructive possession when a defendant knowingly took keys to an automobile containing drugs. See, e.g., United States v. Sotelo-Rivera, 931 F.2d 1317, 1319 (9th Cir.1991), cert. denied, 112 S.Ct. 1186 (1992). Moreover, Recio was accompanied by three men carrying guns, suggesting that he had every intention of taking possession of the cocaine and had brought the men along for security. We reject Vazquez's and Mendez's argument.
 
 
 23
 4. Did the district court err in limiting the cross-examination of the government agent and the government informant?
 
 
 24
 Vazquez and Rivas-Dias argue that the district court improperly limited the cross-examinations of Adam Cobb and a DEA agent. The defendants had sought unsuccessfully to introduce a letter and report from Officer Stocks of the Glendale Police Department that characterized Cobb as an unreliable informant. The district court then refused to allow the defendants to cross-examine DEA agent Smith about Cobb's alleged unreliability and cut off cross-examination of Cobb about his work with the Glendale police.
 
 
 25
 The trial court's decision regarding the scope of cross-examination is reviewed for an abuse of discretion. Bonanno, 852 F.2d at 439. " 'When the trial court excludes evidence tending to impeach a witness, it has not abused its discretion as long as the jury has in its possession sufficient information to appraise the biases and motivations of the witness.' " United States v. Lopez, 885 F.2d 1428, 1438 (9th Cir.1989), cert. denied, 493 U.S. 1032 (1990) (quoting United States v. Kennedy, 714 F.2d 968, 973 (9th Cir.1983), cert. denied, 465 U.S. 1034 (1984)).
 
 
 26
 Although we have "repeatedly insisted that wide latitude be given to defendants in their cross-examination of key prosecution witnesses, especially when the witness is a professional informant," United States v. Uramoto, 638 F.2d 84, 86 (9th Cir.1980) (citations omitted), we conclude that the trial court did not abuse its discretion here. Information was elicited from DEA agent Smith that Cobb had received substantial monetary benefits from his work on the case and might also be entitled to an award of up to $250,000. Smith also testified on cross-examination that he had been informed by the Glendale police that Cobb was unreliable. Cobb admitted on the stand that he had worked as an informant for several years and that he had had a long-standing ambition to work as a informant.[4] This information provided the jury with sufficient information to assess Cobb's motives and biases.
 
 
 27
 5. Was there sufficient evidence to convict Lizalde, Mendez, and Rivas-Dias?
 
 
 28
 In reviewing the sufficiency of the evidence supporting a conviction, we must "search the record to determine 'whether a reasonable jury, after viewing the evidence in the light most favorable to the government, could have found the defendants guilty beyond a reasonable doubt of each essential element of the crime charged.' " United States v. Mares, 940 F.2d 455, 458 (9th Cir.1991) (quoting United States v. Douglass, 780 F.2d 1472, 1476 (9th Cir.1986)). "The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict." Id.[5]
 
 
 29
 a) Lizalde
 
 
 30
 Lizalde does not base his challenge of his conviction on the theory that the government failed to prove the existence of a conspiracy. Instead, he acknowledges the existence of a conspiracy and argues that the evidence was insufficient to support the jury's finding that he was a member of the conspiracy and thus responsible for the acts of other members. He challenges the sufficiency of the evidence to support his conviction on all five counts.
 
 
 31
 Counts one and two: To show that a defendant is a member of a conspiracy, there need only be proof beyond a reasonable doubt that a conspiracy existed and that there was a connection between defendant and the conspiracy. United States v. Aichele, 941 F.2d 761, 763 (9th Cir.1991). "[E]vidence of only a slight connection to the conspiracy is necessary in order to convict any one defendant of knowing participation in it." United States v. Berberian, 851 F.2d 236, 238 (9th Cir.), cert. denied, 489 U.S. 1096 (1988). "Proof of a particular defendant's connection to the conspiracy can be established by circumstantial evidence." Id.
 
 
 32
 The evidence was sufficient to support Lizalde's conviction on these counts. "Although mere proximity to the scene of illicit activity is insufficient to establish involvement in a conspiracy, a defendant's presence may support that inference when viewed in the light of other evidence." United States v. Ray, 920 F.2d 562, 566 (9th Cir.1990), cert. denied, 111 S.Ct. 1084 (1991). Here, the government presented evidence--and one of Lizalde's co-defendants testified--that Lizalde was present at a number of important meetings where the plans for the importation of the cocaine were discussed. Lizalde was also present on at least two occasions where payments were made to Cobb. Lizalde was also responsible for setting up at least one meeting with Cobb and the government introduced phone records to show that another call had been placed to Cobb from Lizalde's hotel room. Cobb testified that although Lizalde did not say much during these various meetings, Lizalde did participate by nodding his head during discussions about importing the drugs and paying Cobb for his services. We affirm Lizalde's conviction on these counts.[6]
 
 
 33
 Count three: Count three charged Lizalde with aiding and abetting the importation of 650 kilograms of cocaine. " 'The elements necessary to convict an individual under an aiding and abetting theory are (1) that the accused had the specific intent to facilitate the commission of a crime by another, (2) that the accused had the requisite intent of the underlying substantive offense, (3) that the accused assisted or participated in the commission of the underlying substantive offense, and (4) that someone committed the underlying substantive offense.' " United States v. Litteral, 910 F.2d 547, 550 (9th Cir.1990) (quoting United States v. Gaskins, 849 F.2d 454, 459 (9th Cir.1988)). "[I]t is enough that the defendant associate with the criminal venture, participate in it, and seek by actions to make it succeed." United States v. Savinovich, 845 F.2d 834, 838 (9th Cir.), cert. denied, 488 U.S. 943 (1988).
 
 
 34
 The same evidence presented by the government in support of the conspiracy charges is sufficient to support Lizalde's conviction for aiding and abetting. Lizalde participated in meetings, set up appointments with the pilot chosen to transport the drugs, and was present when payments were made to the pilot. This evidence is sufficient to permit a rational trier of fact to conclude that Lizalde " 'intentionally assisted the venture's illegal purpose.' " United States v. Disla, 805 F.2d 1340, 1352 (9th Cir.1986) (quoting United States v. Groomer, 596 F.2d 356, 358 (9th Cir.1979)).[7]
 
 
 35
 Counts four and five: These counts, possession of cocaine with intent to distribute and aiding and abetting the carrying of firearms during a drug-trafficking crime, are the substantive counts of the indictment. If foreseeable substantive offenses are committed in furtherance of the conspiracy, a conspirator is properly responsible for them. Pinkerton v. United States, 328 U.S. 640, 646-47 (1946); Aichele, 941 F.2d at 764.
 
 
 36
 Possession of narcotics is certainly a foreseeable substantive offense committed in furtherance of a conspiracy to import and distribute drugs. Aichele, 941 F.2d at 764. This court has also concluded in at least one case that it is foreseeable that weapons will be carried during a drug transaction. United States v. Johnson, 886 F.2d 1120, 1123 (9th Cir.1989) (holding that because the drug industry is a "dangerous, violent business ... it is reasonable to assume that a weapon of some kind would be carried.") (citations omitted), cert. denied, 494 U.S. 1089 (1990); see also United States v. Diaz, 864 F.2d 544, 549 (7th Cir.1988) (finding it sufficiently foreseeable for purposes of co-conspirator liability that guns will be carried in a transaction for one kilogram of cocaine), cert. denied, 490 U.S. 1070 (1989). Because the government carried its burden of proving that Lizalde was a conspirator and because it was foreseeable both that drugs would be possessed and that weapons would be carried in furtherance of that conspiracy, we find the evidence sufficient to uphold Lizalde's conviction on these counts.
 
 
 37
 b) Mendez
 
 
 38
 Mendez challenges his convictions on counts two, four, and five of the indictment. He argues that the government failed to prove he was a knowing member of the conspiracy because there was no evidence that he was aware that drugs were the "ultimate object" of the conspiracy. See Medina, 940 F.2d at 1250. As discussed in greater detail above, because Mendez does not challenge the sufficiency of the evidence showing that a conspiracy existed, we need only consider whether there was sufficient evidence of a slight connection between Mendez and the conspiracy.
 
 
 39
 The evidence is sufficient to justify upholding Mendez's conviction. Mendez drove to the restaurant on the day of the drug transfer with a plastic bag containing $200,000 in twenty-dollar bills.[8] DEA agents testified that Mendez also appeared to be acting as a lookout, because he walked around the parking lot, stared into cars, appeared nervous, and reported seeing police officers. "Counter-surveillance activities qualify as acts in furtherance of a conspiracy." United States v. Penagos, 823 F.2d 346, 348 (9th Cir.1987). Finally, Mendez's co-defendants testified that he was present on different occasions when plans were made for the drug deal. This case is thus distinguishable from United States v. Sanchez-Mata, 925 F.2d 1166 (9th Cir.1991), where the defendant's conviction was reversed in part because there was no evidence of prior association with the conspirators. Because Mendez's conspiracy conviction was proper, his convictions on foreseeable substantive offenses committed in furtherance of the conspiracy may stand as well.
 
 
 40
 c) Rivas-Dias
 
 
 41
 Rivas-Dias challenges the sufficiency of the evidence only on count five. Rivas-Dias does not challenge the evidence showing that a conspiracy existed or even that he was a member of the conspiracy.[9] Instead, his argument is simply that it was unforeseeable that guns would be carried by the men responsible for picking up the drugs.[10] As discussed above, however, this court has held that it is foreseeable that guns will be carried in the drug trade. Johnson, 886 F.2d at 1123. The fact that this case involved 306 kilograms of cocaine worth more than 30 million dollars seems to make it particularly likely that guns would be carried. We reject Rivas-Dias' argument.
 
 
 42
 6. Did the district court err in admitting into evidence the cocaine samples and chemist's test results because of a break in the chain of custody?
 
 
 43
 Vazquez and Mendez argue that Vazquez's convictions on counts three and four and Mendez's conviction on count four cannot stand because the government failed to establish that the substance tested and identified as cocaine by its chemist was the same substance seized at the Guatemalan airport and later brought to the industrial park for transfer. Specifically, Vazquez and Mendez allege that there was a break in the chain of custody of the cocaine, and because of this break there is no evidence that the substance imported and possessed by the defendants was actually cocaine.
 
 
 44
 "The admission of evidence is within the district court's discretion and reviewable under an abuse of discretion standard. The authentication of evidence is 'satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims.' Fed.R.Evid. 901(a). If the evidence is an object connected with the commission of a crime, the proponent must also establish the chain of custody." United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir.) (citations omitted), cert. denied, 112 S.Ct. 164 (1991); see also United States v. Godoy, 528 F.2d 281 (9th Cir.1975) (holding that government must make a prima facie showing that drugs tested were same drugs and in the same condition as those seized from defendant). If there is a reasonable probability that the item of evidence has not been changed in important respects, the district court may admit the evidence. "Further, in the absence of any evidence of tampering, a presumption exists that public officers 'properly discharge[ ] their official duties.' " Id. (quoting Gallego v. United States, 276 F.2d 914, 917 (9th Cir.1960)).
 
 
 45
 We believe that the admission of the cocaine into evidence was proper. Maroti testified that he received the cocaine for testing from Smith, a claim which was substantiated by the fact that each man filled out a portion of the lab report. Vazquez and Mendez have not argued that the government tampered with the evidence, and we can thus presume that the DEA agents properly executed their duties of storing, maintaining and transporting the cocaine. Godoy, 528 F.2d at 283-84. Maroti also testified that he received exactly 650 kilograms of cocaine to test, and the government's assertion that it is unlikely that the DEA would be holding two cocaine shipments of this size at the same time is persuasive. The district judge did not abuse his discretion in admitting the cocaine.
 
 
 46
 7. Did the district court err in failing to grant Rivas-Dias a two point reduction for acceptance of responsibility?
 
 
 47
 Rivas-Dias argues that the district court erred in denying him a two level reduction from his base offense level for acceptance of responsibility. The presentence report had recommended the reduction, but at the sentencing hearing Rivas-Dias stated that he "was found guilty unjustly." The trial judge immediately stated that Rivas-Dias' statement "just cost him two points" and denied the reduction. Rivas-Dias contends the trial judge erred both in denying the reduction and in not giving him notice of his intention to depart from the presentence report.
 
 
 48
 The Guidelines Manual states that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility" and that "the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, comment. (n. 5). "Because application of U.S.S.G. § 3E1.1 is a factual issue, we accept the district court's findings unless they are clearly erroneous." United States v. Richison, 901 F.2d 778, 779 (9th Cir.1990).
 
 
 49
 In light of this deferential standard of review, Rivas-Dias' contention lacks merit. The district judge was clearly entitled to deny Rivas-Dias the reduction because of Rivas-Dias' statement denying his guilt at the sentencing hearing. See United States v. Bradley, 917 F.2d 601, 606 (1st Cir.1990) (upholding denial of reduction in part because of defendant's conduct at sentencing hearing). Even if Rivas-Dias' allegation that he was denying his guilt only on count five is true, the sentencing judge was still entitled to deny the reduction because Rivas-Dias had not accepted responsibility for a significant element of the offenses charged. United States v. Hazel, 928 F.2d 420, 425 (D.C.Cir.1991).
 
 
 50
 Rivas-Dias' reliance on United States v. Brady, 928 F.2d 844 (9th Cir.1991) is misplaced. In Brady, this court held that the district judge should have notified the defendant in advance of his intention to reject the recommendation of the presentence report and then held a hearing on the issue. That holding is simply irrelevant to this case; the district judge could not have held a hearing in advance of sentencing when he clearly based his rejection of the reduction on Rivas-Dias' conduct at the sentencing hearing. The district judge's finding that Rivas-Dias had not accepted responsibility was not clearly erroneous, and we affirm Rivas-Dias' sentence.
 
 
 51
 8. Did the district court improperly set Recio's base offense level for a type and quantity of drug he had not conspired to distribute?
 
 
 52
 Recio contends that the district court erred by sentencing him pursuant to the offense levels for cocaine rather than for marijuana. He claims that he believed that he was to transport 700 pounds of marijuana and was unaware that the real object of the conspiracy was the importation and distribution of cocaine.
 
 
 53
 "A district court's findings of fact are reviewed for clear error and due deference is given to the district court's application of the guidelines to the facts." United States v. Turner, 898 F.2d 705, 708 (9th Cir.), cert. denied, 495 U.S. 962 (1990).
 
 
 54
 We reject Recio's argument. Recio expressly pled guilty to the offense of conspiring to possess and distribute cocaine and affirmatively admitted his guilt for numerous overt acts involving cocaine. The judge's decision to credit these sworn admissions instead of Recio's later contrary assertions hardly constitutes clear error. The two other circuit courts that have considered this situation have rejected the defendants' claims that their base offense levels were erroneously set, in large part because the defendants had expressly pled guilty to trafficking the drug listed in the indictment. United States v. Obi, 947 F.2d 1031, 1032 (2nd Cir.1991); United States v. Fuentes-Moreno, 895 F.2d 24, 27 (1st Cir.1990). The district court correctly set Recio's base offense level according to the offense for which he pled guilty and Recio's sentence is affirmed.
 
 CONCLUSION
 
 55
 The convictions of Vazquez, Mendez, and Lizalde are AFFIRMED. Both the conviction and sentence of Rivas-Dias are AFFIRMED. The sentence of Recio is AFFIRMED.
 
 
 56
 EUGENE F. LYNCH, District Judge, dissenting.
 
 
 57
 I concur in the Memorandum re the defendants Roberto Elias Mendez, Leonard Lizalde a/k/a Lenny, Juan Jose Rivas-Divas, and Manual Recio.
 
 
 58
 However, as to defendant Ricardo Remigio Vazquez, No. 91-50041, I dissent. I find that the defendant Vazquez met the very low standard necessitating an entrapment instruction and the failure to give one was prejudicial error, and therefore the conviction should be reversed and remanded for a new trial. Defendant's burden is to put on only slight evidence of entrapment. For the following reasons, I believe he clearly did so.
 
 
 59
 Defendant's evidence (pp 56-63 of consolidated transcript) is as follows:
 
 
 60
 On March 20, 1990, the defendant and his co-conspirators met with the government informant at a Black Angus restaurant to discuss his and his co-conspirators' plan to import marijuana into the United States. At that time, the informant strongly suggested that they import cocaine rather than marijuana as it was easier to handle and far more lucrative. At the meeting of March 20th, the defendant said no, that he was interested in only importing marijuana, not cocaine. Thereafter, through April 19-20, the government informant Cobb called Vazquez eight or nine times, and during the eight or nine telephone calls, Cobb "lobbied" Vazquez and said that he, Cobb, had someone who could supply the cocaine for the transaction and continued to urge Vazquez that his group import cocaine rather than marijuana. During these phone conversations, Vazquez continued to say no to the cocaine importation.
 
 
 61
 Vazquez testified that he never, during any of these eight or nine conversations, introduced the subject of cocaine and that Cobb was always the one bringing it up.
 
 
 62
 Vazquez went on to testify that during this period of time, Cobb attempted to ingratiate himself with Vazquez and to reassure him about the ease of importing cocaine. During the phone conversations, Vazquez told Cobb that he was financially broke with many family debts. According to Vazquez, Cobb then proceeded to loan him $10,000.
 
 
 63
 Vazquez testified that only after these eight or nine "lobbying" phone calls and only after the lending of the money and only after Cobb agreed to be the source of the cocaine, did Vazquez finally agree that he would go along with Cobb's original suggestion of importing cocaine rather than marijuana.
 
 
 64
 The standard in the Ninth Circuit as to when an entrapment instruction must be given to the jury by the court is clearly set forth in United States v. Sotelo-Murillo, 887 F.2d 176 (9th Cir.1989). The court stated as follows:
 
 
 65
 A defendant is entitled to an entrapment instruction if he or she can present some evidence that (1) a government agent induced him or her to commit an illegal act that (2) he or she was not predisposed to commit. United States v. Lee, 846 F.2d 531, 534 (9th Cir.1988). A defendant must present evidence on both elements of the defense, id., but only "slight evidence is needed to create a factual issue and get the defense to the jury." United States v. Fleishman, 684 F.2d 1329, 1949 (sic) (9th Cir.), cert. denied, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982) (emphasis added).
 
 
 66
 Sotelo-Murillo at 179.
 
 
 67
 The right to an entrapment instruction, then involves a very low standard as all the defendant has to show is slight evidence of entrapment.
 
 
 68
 To satisfy the first prong of test set forth in Sotelo-Murillo, a defendant must show some evidence that a government agent induced him to commit an illegal act.
 
 
 69
 Here the defendant has put on evidence that the informant was the first person who brought up the issue of the defendant importing cocaine rather than marijuana and in addition that the informant a) telephoned him eight or nine times to convince him to do so, b) agreed to be the supplier of the cocaine for the transaction, and c) lent him $10,000 to pay family debts. This then is some evidence that a government agent induced him to commit an illegal act and satisfies the first prong of the test.
 
 
 70
 The majority memorandum does not really touch on the first prong of government inducement but appears to rely solely on the alleged absence of the second prong, i.e., lack of predisposition on the part of the defendant.
 
 
 71
 On page 4 of the majority memorandum, Judge Nelson cites the proposition from United States v. Smith, 924 F.2d 889, 898 (9th Cir.1991), "If a defendant is predisposed to commit a crime, an entrapment defense is unavailable, regardless of the inducement." Judge Nelson then proceeds to analyze the issue of predisposition based on the five factors that a court must consider in determining whether or not to give an entrapment instruction, which five factors are set down in Smith.
 
 
 72
 In reviewing these five factors, the Court notes that factors (2), (4), and (5) all favor and point to lack of predisposition.
 
 
 73
 Factor (2) is whether the suggestion of the importation of cocaine was initially made by the government, and the defendant testified that it was. Factor (4) is whether the defendant evidenced reluctance to commit the offense, overcome only by repeated government inducement or persuasion by the government, and the defendant's testimony was that he told the informant that he did not wish to import cocaine but that he only wished to import marijuana and that the government informant called him eight or nine times. It wasn't until after these repeated phone calls and the promise of inducement set forth in (5) below that the defendant finally capitulated to the informant's request to make the importation cocaine rather than marijuana. Factor (5) is the nature of the inducement or persuasion supplied by the government, and in this regard, the Court notes that the government informant not only urged him orally to do so on repeated occasions and also lent him money, but went so far as to become the supplier of the cocaine that was to be imported by defendant. The nature of the inducement or persuasion supplied by the government was anything but mild and was, in fact, substantial.
 
 
 74
 Factor (1) is somewhat neutral. It deals with the issue of whether or not the defendant had a prior criminal record, and the defendant testified he did not and there is no evidence put on to the contrary. Weighing against this is the evidence that the defendant was conspiring to import another illicit drug, i.e., marijuana.[1]
 
 
 75
 The only factor that argues against the giving of the instruction is factor (3) which relates to whether or not the defendant entered into the scheme for profit which he admits.
 
 
 76
 One cannot look at the factors in a completely rigid fashion and as stated in US v. Fedroff, 874 F.2d 178, 184 (3d Cir.1989), "Indeed, no factor alone indicates either the presence or absence of predisposition." Nevertheless, the application of the factors to the facts at hand indicate that the defendant has borne his burden so that the trial court should have put the issue of entrapment to the jury.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Circuit Rule 34-4
 
 
 **
 The Honorable Eugene F. Lynch, United States District Judge for the Northern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Not all the defendants were charged with every count
 
 
 [2]
 Moreover, in a sense the "inducement" offered by Cobb was not the but-for cause of Vazquez's participation; Vazquez testified that another defendant in the case made the decision to convert the deal into cocaine and that he, apparently without additional contact from Cobb, just decided to stay involved
 
 
 [3]
 Furthermore, the trial judge gave an explicit mere presence instruction for the aiding and abetting charge
 
 
 [4]
 The judge also implied that the defense could call Stocks as a witness and ask him directly about Cobb's reputation. None of the defendants took advantage of that opportunity
 
 
 [5]
 The government argues that the panel is limited to reviewing the sufficiency of the evidence for plain error. Although the defendants did move for an acquittal at the conclusion of the government's case, the government alleges that they failed to move for an acquittal at the conclusion of the evidence or after the discharge of the jury. United States v. Mora, 876 F.2d 76, 77 (9th Cir.1989) (reviewing sufficiency of the evidence only for plain error because defense counsel failed to renew motion for acquittal). Because we believe that the defendants' arguments fail under either standard, we express no opinion on this issue
 
 
 [6]
 Lizalde's reliance on United States v. Medina, 940 F.2d 1247 (9th Cir.1991) (referred to erroneously in Lizalde's brief as Aguilar-Correa ) is misplaced. The court reversed the defendant's conviction in Medina because the government only presented evidence of the defendant's role in a kidnapping; the government failed to present evidence of the defendant's involvement in the larger drug conspiracy of which the kidnapping was a "subplot." There was no evidence that the defendant who committed the kidnapping knew that drugs were involved. In this case, all the government's evidence was directed toward Lizalde's participation in the drug conspiracy and the meetings at which Lizalde was present explicitly dealt with drugs
 
 
 [7]
 The fact that it was the government that ultimately imported the cocaine does not mean that Lizalde cannot be convicted of aiding and abetting. United States v. Gould, 419 F.2d 825, 826 (9th Cir.1969) ("This Court has held that importation by a government informant, aided by government agents, does not absolve those participating in the commission of the offense.")
 
 
 [8]
 Mendez argues that the government did not prove that he knew the money was in the truck or, even if he did know, that he knew it was to be used for nefarious purposes. We agree with the government's argument that the second contention is not credible. As to the first contention, we believe the evidence of his role as a lookout and his presence with the co-defendants on other occasions is sufficient to support a jury inference that he was aware of the money and a knowing member of the conspiracy
 
 
 [9]
 As with the other defendants, Rivas-Dias also does not challenge whether the substantive offense charged in count five was actually committed by the conspirators carrying the guns; he challenges whether he can be charged with responsibility for that offense
 
 
 [10]
 Rivas-Dias also argues that the government did not show that he knew of the four individuals in the car that went to pick up the drugs. However, there need not be direct contact between all members of a conspiracy in order to hold one member responsible for the acts of another member. United States v. Abushi, 682 F.2d 1289, 1293 (9th Cir.1982). It is sufficient that each defendant know of the scope of the enterprise and that the acts taken in furtherance of that enterprise be foreseeable
 
 
 [1]
 The U.S. Attorney argues that the fact that the defendant was willing to import marijuana negates as a matter of law any claim by him that he was entrapped to import cocaine. Neither the government nor the defendant cite any cases directly on point
 The defendant, however, does cite a number of cases that, while not dealing with the issue directly, imply that it did not negate an entrapment defense but is only one factor to be considered in deciding whether or not to give such an instruction to the jury. These cases are US v. Gambino, 788 F.2d 938, 944 (3d Cir.1986); US v. Franko, 909 F.2d 1042 (7th Cir.1990); US v. Bramble, 641 F.2d 681 (9th Cir.1981); US v. Borun, 584 F.2d 424 (D.C.Cir.1978); US v. Segovia, 576 F.2d 251 (9th Cir.1978).