991 F.2d 804
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raul VELASQUEZ, Defendant-Appellant.
 No. 91-50271.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 15, 1992.
Decided April 15, 1993.
 
 Before WIGGINS, KOZINSKI and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Raul Velasquez appeals his conviction, following jury trial, for conspiracy to launder monetary instruments and to fail to file currency transaction reports in violation of 18 U.S.C. § 371; conspiracy to possess and distribute cocaine in violation of 21 U.S.C. § 846; four counts of failure to file currency transaction reports in violation of 31 U.S.C. §§ 5315, 5322; six counts of money laundering in violation of 18 U.S.C. § 1956(a)(3); and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Velasquez claims that the district court erred by refusing to give an entrapment instruction and refusing to sever the narcotics counts from the money laundering and currency transaction reporting counts. He also argues that there was insufficient evidence to support his conviction for causing his company, Unimex, to fail to file currency transaction reports. We affirm Velasquez's conviction on all counts. In a separate published opinion, we reverse the convictions rendered against Unimex.
 
 
 3
 I. Facts.
 
 
 4
 This case arises out of an IRS sting operation. On January 30, 1990, IRS agent Oscar Garcia and detective Frank DeCesare, who were posing as drug dealers, met with Velasquez at Unimex's main office. DeCesare told Velasquez that he wanted to send a wire transfer of money that derived from "merchandise," i.e., drug money, to El Paso, Texas. Velasquez told the agents that he would be able to "take care of" any amounts of money that the agents might have at a later time, but that he could not do it then because he had just bought some check cashing businesses and state banking officials were scrutinizing his books. He proposed to launder the money by processing it through Unimex and cashing checks with it, because drug dogs might alert to the money if he processed it through a bank. He also said that he did all of his work with an organization in Mexico that he referred to as "the family," and that he did not charge them a commission. Velasquez asked the agents if they wanted to invest $100,000 in Unimex, and they told him that they might if it was a good deal, but no firm commitment was made. The meeting ended with Garcia saying that he would call back in a few months.
 
 
 5
 Velasquez met with Garcia and DeCesare twice more in February and March, both times at Unimex's main office. Garcia pressed Velasquez to exchange some bills or wire funds for him, but Velasquez again demurred because the state banking regulators were still scrutinizing his books. He told the agents that he would have to fill out a currency transaction report if the transaction went through Unimex, and that he knew they did not want to do that. However, Velasquez also told them that he could handle the money by physically taking it to Tijuana and exchanging it for a cashier's check at a Mexican bank.
 
 
 6
 They held a fourth meeting on April 4, 1990. Velasquez told the agents that he could get cashier's checks from Mexico. He told them to deliver their money to Nidia Saucedo, the branch manager at a Unimex office down the street. He also told the agents that there would be no record of the transaction in Unimex's books because the transaction was not going to "go through the business of Unimex."
 
 
 7
 On May 15, 1990, DeCesare delivered $48,000 in cash to Saucedo at the Unimex branch. Saucedo told DeCesare that the transaction would not produce a paper trail, and Velasquez later reassured DeCesare that a paper trail had not been created. The next day, David Arias, Velasquez's right hand man, delivered a $48,000 cashier's check to Velasquez, who then gave it to DeCesare. At that point, DeCesare mentioned that he needed help bringing his drugs across the border.
 
 
 8
 On June 18, 1990, DeCesare and an IRS agent delivered $50,000 to Saucedo at the Unimex branch. They then had lunch with Velasquez, who told them that the family was interested in selling "the business" for one million dollars. Velasquez and Arias asked DeCesare if he would sell them 25 kilos of cocaine, and DeCesare said he could sell them 25 to 40 kilos of cocaine. The following day, Velasquez gave DeCesare a $50,000 cashier's check.
 
 
 9
 On July 2, 1990, and again on July 10, DeCesare and the IRS agent delivered $100,000 to Saucedo at the Unimex branch. Velasquez told DeCesare that the family had laundered $40 million through Unimex and was willing to sell the business. He and Arias were unhappy because the money the family laundered through Unimex was not put back into the company. As usual, Velasquez gave DeCesare a cashier's check the next day.
 
 
 10
 In September, DeCesare and Velasquez discussed the sale of Unimex. Velasquez showed him Unimex's legitimate books, and then showed him the accounts of money laundered through Unimex by the family. Many hundreds of thousands of dollars were laundered daily. DeCesare said that he was only interested in buying Unimex because of the money laundering connection with the family.
 
 
 11
 On September 24, 1990, Velasquez told DeCesare that he had the money for the cocaine. DeCesare went to the Unimex main office, where Velasquez opened a safe and showed him a large amount of money. Velasquez and Arias then followed DeCesare out to the parking lot, where DeCesare opened his trunk and handed them each 15 kilos of cocaine. They were arrested when they started walking back toward the building. A search of the two safes located in the Unimex vault later that day revealed approximately $1,105,000 in cash, contained in carrying bags, a cereal box and a VCR box.
 
 
 12
 Velasquez was indicted on October 9, 1990, on charges of conspiracy to launder money and to distribute drugs, possession of cocaine with intent to distribute, money laundering, and causing Unimex to fail to file currency transaction reports. The jury found Velasquez guilty on all counts.
 
 
 13
 II. Motion to Sever.
 
 
 14
 Before trial, Velasquez moved to sever the drug conspiracy count from all the other counts, or to sever the charges of failing to file currency transaction reports and conspiring to launder money from all the other counts. This motion was denied. We review the denial of a motion to sever counts for abuse of discretion. United States v. Nolan, 700 F.2d 479, 482 (9th Cir.), cert. denied, 462 U.S. 1123 (1983).
 
 
 15
 Federal Rule of Criminal Procedure 14 states that if the defendant is prejudiced by joinder of offenses in a single trial, the court may sever the counts. Joinder remains the rule, and severance is required only if joinder "was so manifestly prejudicial that it outweighed the dominant concern with judicial economy and compelled exercise of the court's discretion to sever." Id. If a defendant seeks severance because he wants to testify on some counts but not on others, he must show that "he has important testimony to give on some counts and a strong need to refrain from testifying on those he wants severed." United States v. DiCesare, 765 F.2d 890, 898 (9th Cir.1985), amended, 777 F.2d 543. He must "list the specific testimony he will present about one offense, and his specific reasons for not testifying about others." Id.
 
 
 16
 When Velasquez moved to sever the counts, he failed to identify the testimony he wanted to give on the money laundering counts. He therefore is not entitled to a reversal. United States v. Armstrong, 621 F.2d 951, 954 (9th Cir.1980). Velasquez renewed the motion and offered to make the required showing on the eve of trial. However, Rule 14 motions for a severance of charges are mandatory pretrial motions that are waived if not made before the motions cut-off date. Fed.R.Crim.P. 12(b)(5), (f). Velasquez's proffered showing was untimely.
 
 
 17
 Velasquez also fails to show "manifest prejudice." He argues that he was prejudiced by joinder because the drug and money laundering counts are "inextricably interwoven," and he would therefore open himself up to cross-examination on the drug counts if he testified on the money laundering counts. The prejudice was heightened, he says, by the admission of a videotape showing him agreeing to launder money for two undercover agents. This is not, however, the type of "prejudice" required to reverse the district court. In United States v. Bronco, 597 F.2d 1300 (9th Cir.1979), the case on which Velasquez principally relies, the court held that severance was required where the overlap of evidence between the counts was insignificant, the evidence against the defendant on one of the charges was weak but was used to show an element of the other charge, and evidence of the defendant's violent temperament was used to impeach a witness who testified only to one count. Here, the overlap of evidence is significant, and the evidence on the money laundering and drug counts was substantial. No need for severance exists, because of the defendant's desire to testify about some counts and not others, unless the defendant makes a convincing showing that he has both important testimony to give concerning one group of counts and a strong need to refrain from testifying on the other group. Armstrong, 621 F.2d at 954. Velasquez made no such showing.
 
 
 18
 Finally, Velasquez's Fifth Amendment rights were not compromised. The choice of whether or not to testify remained his, and trial of all the counts together did not coerce the exercise of that choice. Nolan, 700 F.2d at 483.
 
 
 19
 III. The Entrapment Instruction.
 
 
 20
 The court gave an entrapment instruction on the money laundering counts but not the drug counts. Velasquez requested an entrapment instruction as to the drug counts, which was denied. We have not decided whether we review the district court's decisions regarding jury instructions de novo or for abuse of discretion. United States v. Sotelo-Murillo, 887 F.2d 176, 179-80 (9th Cir.1989). We need not decide here, because Velasquez loses under either standard.
 
 
 21
 A defendant is entitled to an entrapment instruction if he presents some evidence that (1) a government agent induced him to commit an illegal act that (2) he was not predisposed to commit. Id. at 179. Only "slight evidence" is needed to get the instruction. Id. at 179. But Velasquez did not present even "slight" evidence of the two elements. United States v. Hoyt, 879 F.2d 505, 509 (9th Cir.1989), amended, 888 F.2d 1257.
 
 
 22
 IV. Sufficiency of the Evidence.
 
 
 23
 The evidence is sufficient to support a conviction if, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Litteral, 910 F.2d 547, 550 (9th Cir.1990).
 
 
 24
 Velasquez argues that the evidence is insufficient to support his conviction of causing Unimex to fail to file currency transaction reports because Unimex did not commit a crime. He contends that Unimex was not involved in the money laundering transactions because he laundered the money as a private individual rather than as an officer of Unimex, and thus Unimex was not required to file a currency transaction report. He also says that Unimex lacked the requisite criminal intent.
 
 
 25
 The government accused Velasquez of causing Unimex to fail to file currency transaction reports, not of aiding and abetting Unimex to do so. This alleges a violation of 18 U.S.C. § 2(b). Under § 2(b), the government need not prove that someone other than the defendant was guilty of the substantive crime. United States v. Causey, 835 F.2d 1289, 1292 (9th Cir.1987). The government need only show that the defendant caused someone else to commit a criminal act, not that the actor had the necessary criminal intent. Id. A financial institution violates § 5313(a) if it fails to file a currency transaction report whenever it is "involved in a transaction" for the transfer of United States currency in excess of $10,000. 31 C.F.R. § 103.22.
 
 
 26
 Unimex was involved in the four money laundering transactions, because Velasquez as its president used the Unimex offices for meetings to arrange the crimes, and used its secure money exchange facilities and a Unimex branch manager, Saucedo, to exchange the cash for checks. Velasquez told the undercover agents that Unimex was owned by investors who were using it as a front for a money laundering operation. A jury could reasonably conclude that Unimex was owned and operated as a money laundering business, and that its president and branch manager were using it for that purpose. There was sufficient evidence to support the jury's finding that Velasquez was acting for the benefit of Unimex when he arranged to have the agents' money laundered. Velasquez willfully caused Unimex to violate the statute, because he knew that the bank was supposed to file currency transaction reports on large currency transactions. He was properly convicted of causing Unimex to violate the law.
 
 
 27
 Velasquez also argues that there was insufficient evidence to support his conviction on the money laundering counts. The indictment charged Velasquez with violating 18 U.S.C. § 1956(a)(3). This provision makes it a crime to conduct a financial transaction involving property that a law enforcement officer says is from the proceeds of unlawful activity, if the defendant (1) intends to avoid a currency transaction reporting requirement, or (2) intends to disguise the nature, location, source, ownership, or control of property that he believes is the proceeds of unlawful activity. Velasquez challenges the sufficiency of the evidence with respect to all three of these elements.
 
 
 28
 First, Velasquez contends that there is no evidence that the agents represented to him that the cash they handed over was the proceeds of narcotics trafficking. Ambiguous statements are sufficient, so long as they suggest that the speaker is engaged in the drug trade. United States v. Breque, 964 F.2d 381, 387 (5th Cir.1992), cert. denied, 1992 WL 331948 (1993). DeCesare told Velasquez that the money he wanted to send out of Los Angeles derived from "merchandise," and there was testimony that "merchandise" in this context meant drugs. There is sufficient evidence for the first element.
 
 
 29
 Second, Velasquez argues that there was no evidence that he believed that the money derived from drug trafficking. But Velasquez told Garcia during the initial negotiations that he did not want to deposit the cash into a bank because drug dogs might detect the scent of drugs on the money. That shows Velasquez believed the currency was drug money.
 
 
 30
 Third, Velasquez argues that there is no evidence that he intended to disguise the source of the cash or to avoid a currency transaction reporting requirement, because the agents never told him it was drug money. Actually, the agents did tell him that it was drug money, and there is evidence that he intended to disguise its source. He suggested processing the cash through Unimex and converting it to $100 bills, because drug dogs might alert to it if he deposited it in the bank. There is also evidence that he intended to avoid currency transaction reporting requirements. He ultimately decided to send the money to Tijuana and buy a cashier's check with it, because that way he could avoid having a transaction on the books for which he should have filed a currency transaction report.
 
 
 31
 Finally, Velasquez argues that since the money laundering convictions were not adequately supported, the conviction for conspiring to violate the money laundering and currency reporting statutes was likewise subject to reversal. This argument fails because the money laundering counts were adequately supported. Velasquez's conviction is
 
 
 32
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3